T.C. Memo. 2002-277

UNITED STATES TAX COURT

CURTIS B. KEENE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 6361-02L.                    Filed November 1, 2002.

Curtis B. Keene, pro se.

<u>Alan J. Tomsic</u> and <u>Scott A. Hovey</u>, for respondent.

MEMORANDUM OPINION

ARMEN, <u>Special Trial Judge</u>:  This matter is before the Court
on respondent's Motion For Summary Judgment, filed pursuant to
Rule 121.[1]  Respondent contends that there is no dispute as to
any material fact with respect to this levy action and that

---

[1]  Unless otherwise indicated, all section references are to
the Internal Revenue Code, as amended, and all Rule references
are to the Tax Court Rules of Practice and Procedure.

respondent's determination to proceed with collection of petitioner's outstanding tax liabilities for 1997 and 1998 should be sustained as a matter of law.

Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials. Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). Summary judgment may be granted with respect to all or any part of the legal issues in controversy "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." Rule 121(a) and (b); see Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994); Zaentz v. Commissioner, 90 T.C. 753, 754 (1988); Naftel v. Commissioner, 85 T.C. 527, 529 (1985). The moving party bears the burden of proving that there is no genuine issue of material fact, and factual inferences will be read in a manner most favorable to the party opposing summary judgment. Dahlstrom v. Commissioner, 85 T.C. 812, 821 (1985); Jacklin v. Commissioner, 79 T.C. 340, 344 (1982).

As explained in detail below, there is no genuine issue as to any material fact, and a decision may be rendered as a matter of law. Accordingly, we shall grant respondent's motion for summary judgment.

Background

    A.  Petitioner's Form 1040 for 1997

    On or about August 25, 1998, Curtis B. Keene (petitioner) and his wife Fanny Keene[2] submitted to respondent a joint Form 1040, U.S. Individual Income Tax Return, for the taxable year 1997.  On the Form 1040, petitioner listed his occupation as "parts representative", and his wife listed her occupation as "assembler".

    Petitioner entered zeros on applicable lines of the income portion of his Form 1040, specifically including line 7 for wages, line 22 for total income, lines 32 and 33 for adjusted gross income, and line 38 for taxable income.  Petitioner also entered zeros on line 39 for tax and on line 53 for total tax. Petitioner then claimed a refund in the amount of $2,342.02, which was equal to the amount of Federal income tax that had been withheld from wages.

    Petitioner attached to his Form 1040 three Forms W-2, Wage and Tax Statement, disclosing the payment of wages to him and his wife during 1997.  The first Form W-2 was from APCO Equipment Corp. of Las Vegas, Nevada; it disclosed the payment of wages to petitioner in the amount of $24,464.61 and the withholding of Federal income tax in the amount of $854.35.  The second Form W-2

_____

    [2]  Fanny Keene did not file with the Court a petition for lien or levy action.  See infra G.  Accordingly, she is not a party to the present proceeding.

was from Express Service, Inc. of Oklahoma City, Oklahoma; it disclosed the payment of wages to petitioner in the amount of $717.79 and the withholding of no Federal income tax. The third Form W-2 was from Host International, Inc. of Bethesda, Maryland; it disclosed the payment of wages to Fanny Keene in the amount of $18,355.65 and the withholding of Federal income tax in the amount of $1,487.67. Together, the three Forms W-2 disclosed the payment of wages to petitioner and his wife in the amount of $43,538.05 and the withholding of Federal income tax in the amount of $2,342.02.

Petitioner also attached to his Form 1040 a three-page typewritten statement that stated, in part, as follows:

> We are submitting this letter as an attachment to what is commonly referred to as a 1997 "income tax" return or as a 1997 "Form 1040" return. As an attachment this letter becomes a part of our 1997 return. This letter is not to be separated from the return as it is a part and parcel there of.
>
> **Voluntary Compliance**
> Over the course of the last year it has come to our attention the so called "Income Tax" is based on a system of voluntary compliance and is not compulsory. * * * [N]owhere does the Internal Revenue Code establish an "Income Tax" liability based *solely* on wages received from any employer. Therefore, any tax assessment and payment, based on such, must be made voluntarily, if at all.
>
> **Return not Required in our Situation**
> The Internal Revenue Code itself also provides that an "Income Tax" return need not be filed unless there is an established liability. Once again, since the Internal Revenue Code establishes no liability *only for* wages received from any employer, there is no requirement to file a return for them. So, clearly,

the filing of a return, as well as the paying of any taxes based *strictly on* wages received from an employer is completely voluntary. * * *

In addition, we are filing this return despite the fact that the Privacy Act Notice clearly informs us that we are not required to file any return. First, the Privacy Act states that we need file *only* for "any tax" that we are "liable". Once again no IR Code section makes us liable for any tax based *only* on wages received from an employer. Ergo we need not file. * * *

## Regarding the Information Provided on this Non-Voluntary Return

The information we have provided on the attached non-voluntary return is true, correct and accurate to the best of our knowledge and belief. We had zero income for 1997. In addition we now realize that we had zero income for all previous years in which we filed. Although, for all these previous years, we were not aware of the voluntary nature of the "income tax" based *only* on wages received from an employer and consequently we mistakenly filed returns thinking that such alleged taxes were mandatory. * * *

* * * * * * *

Also, note that there are numerous court rulings that *do define* the term "income" within the context of income taxes. Generally, the courts have established that "income" is a gain or increase arising from corporate activities. * * *

## Past IRS Irregularities and the attached return

We simply know that we have no liability and have filed this return as a protective and self defensive measure against the widely noted mistakes and abuses of power by the IRS.

The IRS has also routinely "changed" filer's returns. Please note that there is no statute that allows that to be done. Any attempt to "change" our return would be illegal since there is no legislative Statute on which to base such a change. * * *

**Due Process**
Since an "income tax" based solely on wages earned is
voluntary no further issues should be, or even need to
be raised.  * * *

* * * * * * *

Sincerely,

/s/ Curtis B. Keene   /s/ Fanny Keene

B.   Petitioner's Form 1040 for 1998

On or about August 18, 1999, petitioner and his wife Fanny

Keene submitted to respondent a joint Form 1040, U.S. Individual

Income Tax Return, for the taxable year 1998.  On the Form 1040,

petitioner listed his occupation as "parts salesman", and his

wife listed her occupation as "assembler".

Petitioner entered zeros on every line of the income portion

of his Form 1040, specifically including line 7 for wages, line

22 for total income, lines 33 and 34 for adjusted gross income,

and line 39 for taxable income.  Petitioner also entered zeros on

line 40 for tax and on line 56 for total tax.  Petitioner did not

claim any Federal income tax withheld from wages; accordingly, no

refund was claimed.[3]

Petitioner did not attach to his Form 1040 any Forms W-2,

Wage and Tax Statement.  However, he did attach the same three-

page typewritten statement that he attached to his Form 1040 for

---

[3]  The notice of deficiency for 1998 (see infra C) indicates
that $124 was withheld from wages.  See infra note 4.

1997.  See supra A.

C.  Respondent's Deficiency Notices and Petitioner's

Response

On June 16, 2000, respondent (acting through Deborah S.

Decker, Director of respondent's Service Center in Ogden, Utah)

issued separate joint notices of deficiency to petitioner and his

wife for the taxable years 1997 and 1998.  In the notices,

respondent determined deficiencies in Federal income taxes, an

addition to tax under section 6651(a)(1) for failure to timely

file, and accuracy-related penalties under section 6662(a) and

(b)(1) for negligence or disregard of rules or regulations, as

follows:

| Year | Deficiency[1] | Addition to Tax Sec. 6651(a)(1) | Accuracy-related Penalty Sec. 6662(a), (b)(1) |
|------|------------|--------------------------------|-----------------------------------------------|
| 1997 | $4,699     | $117.85                        | $471.40                                       |
| 1998 | 2,792      | ---                            | 533.60                                        |

[1]Insofar as their ultimate tax liabilities were concerned, respondent
gave petitioner and his wife credit for the amounts withheld from wages.
However, we note that the determination of a statutory deficiency does not
take such withheld amounts into account.  See sec. 6211(b)(1).

The deficiency in income tax for 1997 was based on

respondent's determination that petitioner and his wife failed to

report income in the aggregate amount of $43,536, consisting of

wages in the amounts of $24,464, $717, and $18,355.  See supra A.

The deficiency in income tax for 1998 was based on

respondent's determination that petitioner and his wife failed to

report income in the aggregate amount of $29,119, consisting of

wages ($26,374), nonemployee compensation ($2,272), and unemployment compensation ($473).

By certified letters each dated September 16, 2000, petitioner wrote to respondent's Service Center in Ogden, Utah, acknowledging receipt of each of the notices of deficiency dated June 16, 2000, but questioning, inter alia, "whether or not you had any authority to even send me this 'deficiency notice'" and asking that "you identify which code section it is that establishes the tax liability upon which you determined these * * * deficiencies."  In his letters, petitioner also asserted that "It is clear that your Notice of Deficiency is incorrect, illegitimate and most likely fraudulent * * * ."

Petitioner knew that he had the right to contest respondent's deficiency determinations for 1997 and 1998 by filing a petition for redetermination with this Court.[4]  However, petitioner chose not to do so.  Accordingly, on October 30, 2000, respondent assessed the determined deficiencies, addition to tax, and accuracy-related penalties, as well as statutory interest. On that same day, respondent sent petitioner and his wife a

---

[4]  In this regard, each of petitioner's letters dated Sept. 16, 2000, stated as follows:

> I recently received a "Deficiency Notice" dated June 16th, 2000  * * * .  According to you there is an alleged deficiency with respect to this tax period * * * .  You also stated that IF, I wanted to "contest this deficiency before making payment," then I must "file a petition with the United States Tax Court."

notice of balance due, informing them that they had liabilities for 1997 and 1998 and requesting that they pay those liabilities. Petitioner and his wife failed to pay the amounts owing.

On April 16, 2001, respondent sent petitioner and his wife a second notice regarding their liabilities for 1997 and 1998. Once again, petitioner and his wife failed to pay the amounts owing.

D. <u>Respondent's Final Notice and Petitioner's Response</u>

On September 5, 2001, respondent mailed to petitioner and his wife a Final Notice--Notice of Intent to Levy and Notice of Your Right to a Hearing (the final notice) in respect of their outstanding tax liabilities for 1997 and 1998. Petitioner received the final notice on September 7, 2001.

On October 1, 2001, petitioner filed with respondent a Form 12153, Request for a Collection Due Process Hearing, for each of the taxable years 1997 and 1998.[5] The requests, each of which was accompanied by a lengthy cover letter dated October 1, 2001, included, inter alia, a challenge to the existence of the underlying tax liabilities,[6] as well as allegations that

---

[5] Neither request was executed by petitioner's wife, nor did either purport to be filed on her behalf.

[6] For example, the requests allege that "there is no statute requiring me 'to pay' the income taxes at issue" and that "No law authorizes the IRS to claim that I owe more in income taxes than the 'zero' I reported on my * * * income tax return." In this regard, the requests also assert that

(continued...)

petitioner never received any notice and demand for payment.
Petitioner also requested verification from the Secretary that
all applicable laws and administrative procedures were followed
with regard to the assessment and collection of the tax
liabilities in question.

E.   The Appeals Office Hearing

On February 6, 2002, petitioner attended an administrative
hearing in Las Vegas, Nevada, conducted by Appeals Officer Thomas
Lee Tracy (the Appeals officer).  Prior to the hearing, the
Appeals officer reviewed transcripts of petitioner's accounts for
1997 and 1998, as well as the original assessment files for those
years, and, by letter dated December 20, 2001, furnished
petitioner with copies of literal transcripts of his accounts for

---

[6](...continued)

> * * * I am not disputing the "amount" of the alleged
> income tax "liability", but the very "existence" of an
> income tax "liability" *as a matter of law*.  The Tax
> Court, not being a court of law, has no jurisdiction to
> *even* consider such a question.

In addition, the requests boast:

> If * * * the appeals officer can point out such a
> statute [i.e., "any statute that requires me 'to pay'
> income taxes"] at my DP [due process] hearing, I will
> make arrangements to pay whatever amount the appeals
> officer claims is due for my * * * income taxes.-and
> the IRS won't have to resort to seizures under Section
> 6331 to get it.  Nor will there be any need for me to
> appeal an adverse determination to Tax Court.  So the
> only reason for the appeals officer not to identify any
> such statute is because no such statute exists.

those years.[7]

At the hearing, petitioner acknowledged receiving the transcripts that the Appeals officer had previously mailed to him. Nevertheless, petitioner alleged that those transcripts were unreliable because they failed to reflect that notices of deficiency for 1997 and 1998 had been sent to him. Petitioner also complained that he was being denied the right to separate hearings for each of the two taxable years in issue; he also insisted on revisiting the audit phase of his case and challenging the existence or amount of his underlying tax liabilities. The Appeals officer explained that because petitioner had actually received notices of deficiency for 1997 and 1998 but had not filed a petition for redetermination with the Tax Court, petitioner was precluded from challenging the existence or amount of his underlying tax liabilities for those years at the hearing. The Appeals officer also explained that his review of petitioner's transcripts of account for 1997 and 1998 was sufficient to satisfy the verification requirement of section 6330(c)(1) that all applicable laws and administrative procedures had been followed in the assessment and collection process. Ultimately, after repeatedly offering to consider any collection alternatives that petitioner might care to offer, and

---

[7] A literal transcript is a transcript in "plain English" with a minimum amount of "computerese".

being rebuffed, the Appeals officer terminated the hearing. However, before doing so, the Appeals officer provided petitioner with a copy of this Court's opinion in <u>Pierson v. Commissioner</u>, 115 T.C. 576 (2000), advising that "It warns of bringing frivolous arguments before the court."

F. <u>Respondent's Notice of Determination</u>

On February 14, 2002, respondent's Appeals Office issued to petitioner a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 with regard to his tax liabilities for 1997 and 1998. In the notice, the Appeals Office concluded that respondent's determination to proceed with collection by way of levy should be sustained.

G. <u>Petitioner's Petition</u>

On March 21, 2002, petitioner filed with the Court a Petition for Lien or Levy Action seeking review of respondent's notice of determination.[8] The petition includes the following allegations: (1) The Appeals officer failed to obtain verification from the Secretary that the requirements of applicable law or administrative procedure were met as required under section 6330(c)(1); (2) statutes making petitioner liable for Federal income tax were not identified; (3) petitioner was denied the opportunity to challenge the existence or amount of

_____

[8] At the time that the petition was filed, petitioner resided in Las Vegas, Nevada.

his underlying tax liabilities; and (4) petitioner never received a notice and demand for payment for the liabilities in issue.

Petitioner attached to his petition many documents, including copies of: (1) The literal transcripts of his accounts for 1997 and 1998, (2) his letters dated September 16, 2000, acknowledging receipt of the notices of deficiency for 1997 and 1998, and (3) the notice of deficiency for 1998.

H.  Respondent's Motion For Summary Judgment

As stated, respondent filed a Motion For Summary Judgment. Respondent contends, inter alia, that petitioner is barred under section 6330(c)(2)(B) from challenging the existence or amount of his underlying tax liabilities in this collection review proceeding because petitioner received notices of deficiency for the taxes in question. Respondent also contends that the Appeals officer's review of transcripts of petitioner's accounts for 1997 and 1998 satisfied the verification requirement of section 6330(c)(1).

Respondent also filed a Declaration in support of the motion for summary judgment. Attached to the Declaration are Forms 4340, Certificate of Assessments, Payments and Other Specified Matters, in respect of petitioner's accounts for 1997 and 1998. Each Form 4340 shows, inter alia, an assessment on October 30, 2000, the issuance of a notice of balance due on that same date, the issuance of a subsequent collection notice on April 16, 2001,

and the issuance of the final notice of intent to levy on September 5, 2001.  See supra C and D.

Petitioner filed an Objection to respondent's motion. Thereafter, pursuant to notice, respondent's motion was called for hearing at the Court's motions session in Washington, D.C. Although petitioner did not attend the hearing, he submitted two "Motions Session Documents", the first of which was filed as a Supplement to his Objection[9] and the second of which was filed as his Rule 50(c) Statement.

Discussion

Section 6331(a) provides that if any person liable to pay any tax neglects or refuses to pay such tax within 10 days after notice and demand for payment, the Secretary is authorized to collect such tax by levy on the person's property.  Section 6331(d) provides that at least 30 days before enforcing collection by levy on the person's property, the Secretary is obliged to provide the person with a final notice of intent to levy, including notice of the administrative appeals available to the person.

---

[9]  Petitioner's Supplement is virtually identical to his Objection.

Section 6330 generally provides that the Commissioner cannot proceed with collection by levy until the person has been given notice and the opportunity for an administrative review of the matter (in the form of an Appeals Office hearing) and, if dissatisfied, with judicial review of the administrative determination.  See Davis v. Commissioner, 115 T.C. 35, 37 (2000); Goza v. Commissioner, 114 T.C. 176, 179 (2000).

Section 6330(c) prescribes the matters that a person may raise at an Appeals Office hearing.  In sum, section 6330(c) provides that a person may raise collection issues such as spousal defenses, the appropriateness of the Commissioner's intended collection action, and possible alternative means of collection.  Section 6330(c)(2)(B) provides that the existence and amount of the underlying tax liability can be contested at an Appeals Office hearing only if the person did not receive a notice of deficiency for the tax in question or did not otherwise have an earlier opportunity to dispute the tax liability.  See Sego v. Commissioner, 114 T.C. 604, 609 (2000); Goza v. Commissioner, supra.  Section 6330(d) provides for judicial review of the administrative determination in the Tax Court or a Federal District Court, as may be appropriate.

A.  Summary Judgment

Petitioner challenges the assessments made against him on October 30, 2000, on the grounds:  (1) The notices of deficiency

dated June 16, 2000, were "seriously flawed" in that they were issued at a time when "no assessed liability against the petitioner even existed" and that (2) such notices were otherwise "premature".  However, the record shows that petitioner received the notices of deficiency and disregarded the opportunity to file a petition for redetermination with this Court.  See sec. 6213(a).  It follows that section 6330(c)(2)(B) bars petitioner from challenging the existence or amount of his underlying tax liabilities in this collection review proceeding.  See <u>Nestor v. Commissioner</u>, 118 T.C. 162, 165-166 (2002).

Even if petitioner were permitted to challenge the existence or amount of his underlying tax liabilities, his arguments that the notices were "seriously flawed" and otherwise "premature" are frivolous and groundless.  See <u>Monaco v. Commissioner</u>, T.C. Memo. 1998-284 (categorically rejecting the argument that the Commissioner may not determine a deficiency without first making an assessment); see also <u>Corcoran v. Commissioner</u>, T.C. Memo. 2002-18 (rejecting the argument that the issuance of a notice of deficiency may not precede a 30-day letter or an administrative hearing); <u>Trueblood v. Commissioner</u>, T.C. Memo. 1997-524 (same); <u>Ruff v. Commissioner</u>, T.C. Memo. 1990-521 (same).  Likewise, the argument that petitioner may still be making regarding the authority of respondent's service center director to issue deficiency notices is frivolous and groundless.  See <u>Nestor v.</u>

Commissioner, supra at 165; Goza v. Commissioner, supra. Further, as the Court of Appeals for the Fifth Circuit has remarked: "We perceive no need to refute these arguments with somber reasoning and copious citation of precedent; to do so might suggest that these arguments have some colorable merit." Crain v. Commissioner, 737 F.2d 1417, 1417 (5th Cir. 1984). Suffice it to say that petitioner is a taxpayer subject to the Federal income tax, see secs. 1(a)(1), 7701(a)(1), (14), and that compensation for labor or services rendered constitutes income subject to the Federal income tax, sec. 61(a)(1); United States v. Romero, 640 F.2d 1014, 1016 (9th Cir. 1981); see also sec. 86 regarding the taxability of unemployment compensation.

We likewise reject petitioner's argument that the Appeals officer failed to obtain verification from the Secretary that the requirements of all applicable laws and administrative procedures were met as required by section 6330(c)(1). The record shows that the Appeals officer obtained and reviewed transcripts of petitioner's accounts for 1997 and 1998.

Federal tax assessments are formally recorded on a record of assessment. Sec. 6203. "The summary record, through supporting records, shall provide identification of the taxpayer, the character of the liability assessed, the taxable period, if applicable, and the amount of the assessment." Sec. 301.6203-1, Proced. & Admin. Regs.

Section 6330(c)(1) does not require the Commissioner to rely on a particular document (e.g., the summary record itself rather than transcripts of account) to satisfy the verification requirement imposed therein.  Roberts v. Commissioner, 118 T.C. 365, 371 n.10 (2002); Standifird v. Commissioner, T.C. Memo. 2002-245; Weishan v. Commissioner, T.C. Memo. 2002-88; Lindsey v. Commissioner, T.C. Memo. 2002-87; Tolotti v. Commissioner, T.C. Memo. 2002-86; Duffield v. Commissioner, T.C. Memo. 2002-53; Kuglin v. Commissioner, T.C. Memo. 2002-51.  In this regard, we observe that the literal transcripts furnished to petitioner and the Forms 4340 attached to respondent's Declaration contained all the information prescribed in section 301.6203-1, Proced. & Admin. Regs.[10]  See Weishan v. Commissioner, supra; Lindsey v. Commissioner, supra; Tolotti v. Commissioner, supra; Duffield v.

_____

[10]  The record does not definitively disclose the type of transcript that the Appeals officer reviewed prior to the administrative hearing on Feb. 6, 2002.  The Appeals officer may have reviewed the literal transcripts that he furnished to petitioner or, more likely given the fact that such transcripts are typically prepared for use by taxpayers unfamiliar with IRS computer codes, he may have reviewed TXMOD-A transcripts.  See Schroeder v. Commissioner, T.C. Memo. 2002-190 n.3, for a description of such transcripts.  In any event, we regard the matter to be irrelevant.  See Hack v. Commissioner, T.C. Memo. 2002-243 ("The use of computer-generated transcripts of account is a valid verification that the requirements of any applicable law or administrative procedure have been met."); Hauck v. Commissioner, T.C. Memo. 2002-184 ("We have repeatedly held that the Commissioner may rely on transcripts of account to satisfy the verification requirement of section 6330(c)(1).").

Commissioner, supra; Kuglin v. Commissioner, supra.[11]

Petitioner has not alleged any irregularity in the assessment procedure that would raise a legitimate question about the validity of the assessments or the information contained in the literal transcripts or the Forms 4340.[12]  See Davis v. Commissioner, 115 T.C. at 41; Mann v. Commissioner, T.C. Memo. 2002-48.  Accordingly, we hold that the Appeals officer satisfied the verification requirement of section 6330(c)(1).  Cf. Nicklaus v. Commissioner, 117 T.C. 117, 120-121 (2001).

Petitioner also contends that he never received a notice and demand for payment of his tax liabilities for 1997 and 1998.  The requirement that the Secretary issue a notice and demand for payment is set forth in section 6303(a), which provides in pertinent part:

---

[11]  To the extent that petitioner may still be arguing that the Appeals officer failed to provide him with a copy of the verification, we note that sec. 6330(c)(1) does not require that the Appeals officer provide the taxpayer with a copy of the verification at the administrative hearing.  Nestor v. Commissioner, 118 T.C. 162, 166 (2002); sec. 301.6330-1(e)(1), Proced. & Admin Regs.  In any event, the Appeals officer provided petitioner with literal transcripts of his accounts for 1997 and 1998, and respondent's counsel provided petitioner with Forms 4340 for those years.

[12]  Petitioner argues that the literal transcripts are suspect because they do not reflect the issuance of the notices of deficiency dated June 16, 2000.  However, there is nothing to suggest that the issuance of a notice of deficiency is an event that the Commissioner records in a transcript of a taxpayer's account.  In any event, there is no question that deficiency notices for 1997 and 1998 were in fact sent by respondent and received by petitioner.

>      SEC. 6303(a). General Rule.--Where it is not
> otherwise provided by this title, the Secretary shall,
> as soon as practicable, and within 60 days, after the
> making of an assessment of a tax pursuant to section
> 6203, give notice to each person liable for the unpaid
> tax, stating the amount and demanding payment thereof.
> * * *

In particular, the Forms 4340 show that respondent sent petitioner notices of balance due on the same date that respondent made assessments against petitioner for the taxes, addition to tax, and accuracy-related penalties determined in the notices of deficiency.  A notice of balance due constitutes a notice and demand for payment within the meaning of section 6303(a).  See, e.g., Hughes v. United States, 953 F.2d 531, 536 (9th Cir. 1992); Schaper v. Commissioner, T.C. Memo. 2002-203; Weishan v. Commissioner, supra; see also Hansen v. United States, 7 F.3d 137, 138 (9th Cir. 1993).  In addition, other notices were sent to petitioner, at least one of which (the final notice, discussed supra D) petitioner received; likewise, petitioner received the Forms 4340.  Such notices and forms were sufficient to constitute notice and demand within the meaning of section 6303(a) because they informed petitioner of the amount owed and requested payment.[13]  Standifird v. Commissioner, supra; Hack v.

---

[13]  Thus, we reject petitioner's argument, which we regard as frivolous and groundless, that notice and demand for payment was not in accord with a Treasury decision issued in 1914 that required a Form 17 to be used for such purpose.  See Davich v. Commissioner, T.C. Memo. 2002-255; Tapio v. Commissioner, T.C. Memo. 2002-141.

<u>Commissioner</u>, T.C. Memo. 2002-244; <u>Hack v. Commissioner</u>, T.C. Memo. 2002-243; see <u>Elias v. Connett</u>, 908 F.2d 521, 525 (9th Cir. 1990) ("The form on which a notice of assessment and demand for payment is made is irrelevant as long as it provides the taxpayer with all the information required under 26 U.S.C. § 6303(a).").

Petitioner has failed to raise a spousal defense, make a valid challenge to the appropriateness of respondent's intended collection action, or offer alternative means of collection. These issues are now deemed conceded. Rule 331(b)(4). In the absence of a valid issue for review, we conclude that respondent is entitled to judgment as a matter of law sustaining the notice of determination dated February 14, 2002.

B.  <u>Imposition of a Penalty Under Section 6673</u>

As relevant herein, section 6673(a)(1) authorizes the Tax Court to require a taxpayer to pay to the United States a penalty not in excess of $25,000 whenever it appears that proceedings have been instituted or maintained by the taxpayer primarily for delay or that the taxpayer's position in such proceeding is frivolous or groundless. The Court has indicated its willingness to impose such penalty in lien and levy cases, <u>Pierson v. Commissioner</u>, <u>supra</u> at 580-581, and has in fact imposed a penalty in many such cases.[14]

_____

[14] E.g., <u>Roberts v. Commissioner</u>, 118 T.C. 365 (2002) (imposing a penalty in the amount of $10,000); <u>Bartschi v.</u>
(continued...)

In the present case, respondent has not specifically requested imposition of a penalty under section 6673(a)(1). However, in a collection review case, the Court may impose such a penalty on its own motion.  E.g., Nestor v. Commissioner, T.C. Memo. 2002-251; Schroeder v. Commissioner, T.C. Memo. 2002-190; Williams v. Commissioner, T.C. Memo. 2002-111.

---

[14](...continued)
Commissioner, T.C. Memo. 2002-268 (imposing a penalty in the amount of $2,500); Land v. Commissioner, T.C. Memo. 2002-263 (imposing a penalty in the amount of $5,000); Davich v. Commissioner, T.C. Memo. 2002-255 (imposing a penalty in the amount of $5,000); Schmith v. Commissioner, T.C. Memo. 2002-252 (imposing a penalty in the amount of $1,000); Nestor v. Commissioner, T.C. Memo. 2002-251 (imposing a penalty in the amount of $5,000); Standifird v. Commissioner, T.C. Memo. 2002-245 (imposing a penalty in the amount of $7,500); Hack v. Commissioner, T.C. Memo. 2002-244 (imposing a penalty in the amount of $2,000); Hack v. Commissioner, T.C. Memo. 2002-243 (same); Horejs v. Commissioner, T.C. Memo. 2002-241 (imposing a penalty in the amount of $1,000); Schroeder v. Commissioner, T.C. Memo. 2002-190 (imposing sua sponte a penalty in the amount of $1,000); Hauck v. Commissioner, T.C. Memo. 2002-184 (imposing a penalty in the amount of $10,000); Wagner v. Commissioner, T.C. Memo. 2002-180 (imposing a penalty in the amount of $4,000); Perry v. Commissioner, T.C. Memo. 2002-165 (imposing a penalty in the amount of $2,500); Crow v. Commissioner, T.C. Memo. 2002-149 (imposing a penalty in the amount of $1,500); Smeton v. Commissioner, T.C. Memo. 2002-140 (imposing a penalty in the amount of $1,000); Newman v. Commissioner, T.C. Memo. 2002-135 (imposing a penalty in the amount of $1,000); Williams v. Commissioner, T.C. Memo. 2002-111 (imposing sua sponte a penalty in the amount of $1,000); Yacksyzn v. Commissioner, T.C. Memo. 2002-99 (imposing a penalty in the amount of $1,000); Watson v. Commissioner, T.C. Memo. 2001-213 (imposing a penalty in the amount of $1,500); Davis v. Commissioner, T.C. Memo. 2001-87 (imposing a penalty in the amount of $4,000).

We are convinced that petitioner instituted the present proceeding primarily for delay. In this regard, it is clear that petitioner regards this proceeding as nothing but a vehicle to protest the tax laws of this country and to espouse his own misguided views, which we regard as frivolous and groundless. In short, having to deal with this matter wasted the Court's time, as well as respondent's, and taxpayers with genuine controversies may have been delayed.

Also relevant is the fact that petitioner was informed of the provisions of section 6673 as applicable to collection review proceedings such as the present one. In this regard, petitioner was provided at the administrative hearing on February 6, 2002, with a copy of this Court's opinion in <u>Pierson v. Commissioner</u>, <u>supra</u>, in which the Court indicated its willingness to impose the section 6673 penalty in lien and levy cases.

Under the circumstances, we shall, on our own motion, impose a penalty on petitioner pursuant to section 6673(a)(1) in the amount of $5,000.

C. <u>Conclusion</u>

We have considered all of petitioner's arguments that are not discussed herein, and we find them to be without merit and/or irrelevant.

In order to give effect to the foregoing,

An order granting respondent's motion and decision for respondent, including a penalty on petitioner under section 6673(a)(1), will be entered.