121 T.C. No. 2

UNITED STATES TAX COURT

CURTIS B. KEENE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11604-02L.                    Filed July 8, 2003.

P filed a petition for levy action under sec.
6330(d), I.R.C., disputing R's notice of determination
concerning collection action with respect to his 1991
tax liability on the ground that he was not permitted
by the IRS Appeals Office to make an audio recording of
his sec. 6330 hearing, in violation of sec. 7521(a)(1),
I.R.C. Subsequently, P filed an amended petition again
asserting his claimed right to audio record such
hearing. P had previously submitted documents to R in
his request for a collection due process hearing that
asserted several frivolous and groundless arguments. R
informed P by letter that he could make no audio
recording. P gave R the required advance request to
record. P appeared for the hearing but was told by R
that he could not record it. P decided that he did not
want to have a hearing if he could not record it, and
he left with his recording equipment. P contends that
sec. 7521(a)(1), I.R.C., provides him with the right to
audio record his sec. 6330 hearing because it
constitutes an "in-person interview". R contends that

P does not have a right to audio record the hearing because it is not an "interview" within the meaning of sec. 7521(a)(1), I.R.C.

Held, P is entitled, pursuant to sec. 7521(a)(1), I.R.C., to make an audio recording of his sec. 6330 hearing with the Internal Revenue Service Appeals Office.

Curtis B. Keene, pro se.

Rollin G. Thorley and Robin Ferguson, for respondent.


OPINION


DAWSON, Judge:  This case was assigned to Special Trial Judge Robert N. Armen, Jr., pursuant to the provisions of section 7443A(b)(4), and Rules 180, 181, and 182.[1]  The Court agrees with and adopts the opinion of the Special Trial Judge, which is set forth below.

OPINION OF THE SPECIAL TRIAL JUDGE

ARMEN, Special Trial Judge:  This matter is before the Court on respondent's Motion for Summary Judgment, filed pursuant to Rule 121.  The only issue raised by the parties is whether, pursuant to the provisions of section 7521(a)(1), petitioner is entitled to audio record his section 6330 hearing with the Internal Revenue Service Appeals Office.

---

[1]  All Rule references are to the Tax Court Rules of Practice and Procedure, and, unless otherwise indicated, all section references are to the Internal Revenue Code, as amended.

## Background

Petitioner was a resident of Las Vegas, Nevada, when he filed his petition herein.

This case involves the 1991 tax year.[2] Petitioner and his spouse, Fanny Keene, filed a timely joint Federal income tax return on which they reported wages of $32,047; taxable IRA distributions of $21,996; taxable pensions and annuities of $47,764; a business income loss of $48,483 on Schedule C from the operation of Hizzoner's Restaurant; and total tax of $9,327 with Federal income tax withheld of $2,837, and tax owed of $6,845. Respondent assessed the amount due as reported on the return. In 1992 and 1993 installment payments totaling $1,400 were made and applied to the amount of tax assessed. On or about May 14, 1993, petitioner filed for bankruptcy, and that proceeding was closed on February 4, 1994. During the years 1995, 1996, and 1997, overpaid credits totaling $552.97 were applied to the 1991 amount assessed. Also in 1997, there was a subsequent payment by levy of $523.17 and a miscellaneous payment of $494.22; both amounts were applied to the 1991 income tax liability. Five payments of $350 each were later made and applied to the 1991 tax liability.

---

[2] See Keene v. Commissioner, T.C. Memo. 2002-277, in which we granted the Commissioner's motion for summary judgment sustaining the determination to proceed with the collection of the taxpayer's Federal income tax liabilities for 1997 and 1998, and imposed a penalty of $5,000 under sec. 6673(a)(1). That case did not involve the sec. 7521(a)(1) audio recording issue presented in the instant case.

On or about February 10, 2001, a Form 1040X, Amended U.S. Individual Income Tax Return, for the year 1991 was filed showing that no income tax was due for that year and claiming a refund of $2,837, which was the amount of Federal income tax withheld.  The explanation petitioner gave for filing the 1991 amended return was:

> Due to my ignorance, I mistakenly reported as "income" what were actually "sources" of income.  In addition, the amounts that I incorrectly listed as "income" were, in fact, amounts that are exempt from taxation.

There was a three-page attachment to the amended return in which petitioner (not his spouse) made frivolous and groundless arguments why he did not owe the assessed tax.

By letter dated April 25, 2001, the amended return and attachment were determined by the Examination Branch, Ogden Compliance Service Center, to be frivolous.  On November 1, 2001, after receiving additional groundless statements from petitioner, the Director of IRS Compliance Services disallowed petitioner's claim for refund.

On January 21, 2002, respondent issued to petitioner a Final Notice--Notice Of Intent To Levy And Notice Of Your Right To A Hearing with regard to petitioner's unpaid Federal income tax for 1991.

On February 11, 2002, petitioner submitted to respondent a Form 12153, Request for a Collection Due Process Hearing, which attached a statement setting forth the following contentions:

I never received a "notice and demand" for payment for any 1991 income taxes.

I claim there is no underlying, statutory liability in connection with the income taxes at issue.

I claim there is no statute requiring me "to pay" the income taxes at issue.

No law authorizes the IRS to claim that I owe more in income taxes than the "zero" I reported on my 1991 amended 1040X income tax return.

The IRS Decoding manual provides additional proof that I cannot own more in 1991 income taxes than the "zero" shown on my 1991 income tax return.

The Secretary has not authorized any action for the collection of taxes and penalties as required by 26 USC 7401.

The Attorney General has not directed that any action against me for the enforced collection of any income taxes and penalties for the year 1991 "be commenced" as is required by 26 USC 7401.

In addition to everything else, Sections 6331, 7701 and 7608 clearly establish that IRS Revenue Officers or Revenue Agents have no authority to seize property in payment of income taxes.

Petitioner concluded his statement with a declaration of his intent to tape record the requested hearing.

By letter dated May 3, 2002, Appeals Officer Donna Fisher (the Appeals officer) informed petitioner that his hearing was scheduled for May 16, 2002. The Appeals officer's letter also stated:

Further, no audio or stenographic recordings are allowed on Appeals cases effective as of May 2, 2002, forward. Therefore, your request to tape record and/or bring a court reporter to the Collection Due Process hearing is denied.

By letter dated May 10, 2002, petitioner informed the Appeals Office that he would not be able to attend the hearing scheduled for May 16, 2002, and requested that it be rescheduled. Petitioner also requested that the Appeals officer provide him with the statutory or regulatory authority barring him from recording the hearing.

By letter dated May 14, 2002, the Appeals officer informed petitioner that his hearing was rescheduled for June 3, 2002. The Appeals officer also enclosed with her letter a copy of an internal, apparently unpublished, Memorandum to All Appeals Area Directors dated May 2, 2002, from the Acting Chief of the Office of Appeals in Washington, D.C., which stated as follows:

> Effective immediately, audio and stenographic recordings will no longer be allowed on Appeals cases. Taxpayers and/or representatives who have already requested such recording will be informed of the change in practice immediately, and advised that the request cannot be allowed.

> Prior to enactment of IRC 7521, Service Compliance functions voluntarily allowed audio recordings. Appeals decided to follow this practice at that time. IRC 7521, enacted in 1988, provided for the allowance of audio recordings of conferences relative to the determination or collection of a tax, between the taxpayer and the Internal Revenue Service, provided that the Service was given at least ten (10) days advance notice of the taxpayer's intent to record the conference.

> Although Appeals makes liability and collectibility determinations, Appeals' procedures differ from Examination and Collection function contacts that are not discretionary for the taxpayer. Contact with Appeals is discretionary for the taxpayer, and as such, recording has always been discretionary for Appeals.

It should also be noted that Appeals was deliberately excluded in Notice 89-51 that dealt with the audio recording provision, as Counsel determined that IRC 7521 was not applicable to Appeals.

Recently Appeals has had several incidents of audio recordings being altered to imply Appeals employees were making inappropriate comments. In some cases, those altered recordings were broadcast on the radio. We are also aware of instances where excerpts of stenographic records were combined in inappropriate ways and published in anti-tax newsletters and other anti-government publications.

These actions have had the result of undermining the appearance of Appeals' competence, impeding Appeals ability to adequately function in its role as a dispute resolution function. These incidents have interfered with our customers' perception of our ability to carry our Appeals' mission to be fair and impartial in our considerations; and therefore cannot be allowed to continue.

In addition, Appeals has always been concerned that the practice of recording conferences and hearings could inappropriately interfere with the informal nature of Appeals conferences, and therefore might improperly impede settlement.

Therefore, the decision has been made to eliminate all audio as well as stenographic recordings of Appeals conferences and hearings. That decision is effective immediately upon the date of this memorandum.

This memorandum supersedes guidance issued in Internal Revenue Manual 8.7.2.3.4 and 8.6.1.2.5 on the subject of recording hearings and conferences. The IRM will be updated to reflect these changes during the next regular update of that section.

On June 3, 2002, petitioner, after giving to the Appeals Office his advance request to record, appeared for the hearing. When the Appeals officer informed him that he would not be permitted to use an audio recorder, petitioner decided that he

did not want to have a hearing if he could not record it, so he left with his recording equipment.

On June 11, 2002, respondent issued to petitioner a Notice of Determination Concerning Collection Actions(s) Under Section 6320 and/or 6330.  The notice of determination stated that respondent determined that, after balancing the need for efficient collection against petitioner's arguments, it was appropriate to proceed with the levy action.

On July 12, 2002, petitioner filed with the Court a timely Petition for Lien or Levy Action.  The only issue raised in the petition pertains to the Appeals officer's decision to preclude petitioner from recording the hearing.  The petition states in pertinent part:

> Petitioner states that the determination action by the Appeals Office in this instant case was not only inappropriate, biased and prejudiced, but also an illegal action designed to deny the petitioner his due process rights to make a full and complete official record of a hearing with the government a potential adversarial relationship.

On August 12, 2002, petitioner filed an Amended Petition elaborating on his argument that he should have been permitted to audio record the hearing.

After filing an answer to the amended petition, respondent filed the motion for summary judgment that is pending before the Court.  Respondent maintains that there is no dispute as to material facts and that he is entitled to judgment as a matter of

law sustaining the notice of determination dated June 11, 2002. Respondent's position is that section 7521(a)(1),[3] which authorizes taxpayers to record "in-person interviews", is not applicable to hearings pertaining to collection actions under section 6320 or 6330. Petitioner filed an objection to respondent's motion.

This matter was called for hearing at the Court's motions session held in Washington, D.C. Counsel for respondent appeared at the hearing and was heard. Although there was no appearance by or on behalf of petitioner at the hearing, he filed with the

---

[3] Sec. 7521, which is entitled "Procedures Involving Taxpayer Interviews", provides in part:

SEC. 7521(a) Recording of Interviews.--

(1) Recording by Taxpayer.--Any officer or employee of the Internal Revenue Service in connection with any in-person interview with any taxpayer relating to the determination or collection of any tax shall, upon advance request of such taxpayer, allow the taxpayer to make an audio recording of such interview at the taxpayer's own expense and with the taxpayer's own equipment.

(2) Recording by IRS Officer or Employee.--An officer or employee of the Internal Revenue Service may record any interview described in paragraph (1) if such officer or employee--

(A) informs the taxpayer of such recording prior to the interview, and

(B) upon request of the taxpayer, provides the taxpayer with a transcript or copy of such recording but only if the taxpayer provides reimbursement for the cost of the transcription and reproduction of such transcript or copy.

Court a written statement pursuant to Rule 50(c) opposing respondent's motion on the ground that he was denied his request to audio record his section 6330 hearing with the Appeals Office under the provisions of section 7521(a)(1).

## Discussion

Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials. See Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). Summary judgment may be granted with respect to all or any part of the legal issues in controversy "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994).

Section 7521(a)(1) expressly states that, upon the advance request of a taxpayer, an Internal Revenue Service officer or employee shall permit the taxpayer to make an audio recording of "any in-person interview * * * relating to the determination or collection of any tax". Neither section 7521(a)(1) nor the legislative history[4] directly and clearly defines or otherwise

---

[4] See H. Conf. Rept. 100-1104 (Vol. II), at 212-214 (1988), 1988-3 C.B. 473, 702-704.

describes the term "in-person interview".  Where a term is not defined in the statute, it is appropriate to accord the term its "ordinary meaning".  Northwest Forest Resource Council v. Glickman, 82 F.3d 825, 833 (9th Cir. 1996).  And when there is no indication that Congress intended a specific legal meaning for the term, courts may look to sources such as dictionaries for a definition.  Muscarello v. United States, 524 U.S. 125, 127-132 (1998); see also Huntsberry v. Commissioner, 83 T.C. 742, 747-748 (1984), in which the Court stated that "where a statute is clear on its face, * * * we would require unequivocal evidence of legislative purpose before construing the statute so as to override the plain meaning of the words used therein."

The term "interview" is defined by Webster's Third New International Dictionary Unabridged 1183-1184 (1993) as:

> a meeting face to face: a private conversation; usu: a formal meeting for consultation: CONFERENCE

Similar definitions appear in other dictionaries.  For example, the American Heritage Dictionary (4th ed. 1970) defines the term "interview" as "a face to face meeting arranged for the discussion of some matter"; Webster's II New Riverside University Dictionary 639 (1984) defines the term as "a formal face-to-face meeting"; and Webster's New Collegiate Dictionary 600 (1979) defines the term as "a formal consultation" or "a meeting at which information is obtained".

Petitioner contends that he is entitled to make an audio recording of his section 6330 hearing before the Appeals Office because the specific requirements of section 7521(a)(1) have been satisfied.  He stresses that the meeting is presided over by an officer or employee of the IRS; that the meeting is "in person"; that the meeting involves the collection of tax; that he gave advance notice of his intent to record; and he brought his own recording equipment for that purpose.[5]

To the contrary, respondent contends that petitioner has no statutory right to audio record a section 6330 proceeding because it is a "hearing", as distinguished from an "interview", and, therefore, is not subject to the provisions of section 7521(a)(1).  The distinction, respondent argues, is that an "interview" is technically one initiated by the IRS that the taxpayer is under some compulsion to attend and is for the purpose of gathering information to use in the determination or collection of tax.  In respondent's view, a taxpayer "interview"

_____

[5] Petitioner has cited and relied on several existing sections of the Internal Revenue Manual, as well as Publication 1 entitled "Your Rights as a Taxpayer", sec. IV, par. 2, sentence 2, which states that taxpayers "may make sound recordings of any meeting with our examination, appeal, or collection personnel". Although we recognize that these are not statements of statutory or regulatory rights, audio recordings by taxpayers of Appeals conferences have been permitted since the early 1980s, and the practice continued after the enactment of sec. 7521(a)(1) in 1988 and secs. 6320 and 6330 in 1998.  It was not until May 2, 2002, in its unpublished Memorandum to All Appeals Area Directors that the Appeals Office began denying taxpayers the right to make audio recordings in Appeals cases.

by the Examination or Collection Division of the IRS is involuntary and inquisitorial in nature and can be enforced by the issuance of an administrative summons, but, by contrast, a section 6330 hearing is voluntary on the taxpayer's part.

There are several reasons why we conclude that petitioner is entitled to audio record his section 6330 hearing with the Appeals Office.

First, the distinction that respondent seeks to draw between the terms "interview" and "hearing" in the context of section 6330 is, at best, tenuous and unpersuasive. As the general and ordinary definitions of "interview" suggest, we think the exchange of information that occurs between a taxpayer and an Appeals officer during an administrative hearing conducted under section 6330 constitutes an "in-person interview" within the meaning of that term as used in section 7521(a)(1).

A section 6330 hearing provides a taxpayer with the opportunity to raise any relevant issues under section 6330(c)(2) relating to the proposed collection action, including appropriate spousal defenses, challenges to the appropriateness of the collection action, offers of collection alternatives, and, in appropriate circumstances, challenges to the underlying tax liability. During the administrative hearing, the taxpayer is expected to offer documentation, proposals, and arguments and to answer the Appeals officer's inquiries regarding relevant issues.

In turn, the administrative hearing provides the Appeals officer with the opportunity to determine whether the Commissioner has followed applicable laws and administrative procedures with regard to the assessment and collection action in dispute and to develop a record with respect to issues raised by the taxpayer. In short, the meeting between the taxpayer and the Appeals officer is face-to-face, private, arranged for the discussion of specific matters, and formal in the sense that it is prescribed by law.[6]  As previously indicated, these are all characteristics of an "interview" as that term is commonly defined.

Second, we reject the distinction that respondent seeks to draw between what he describes as the inquisitorial nature of a taxpayer interview by the Examination or Collection Division and the voluntary nature of a section 6330 hearing before the Appeals Office.  It is our view that the section 6330 hearing is an integral part of the tax collection process and therefore relates to the "collection of any tax" within the meaning of section 7521(a)(1).  After all, the Commissioner generally may not collect a tax by levy or permit a notice of Federal tax lien to remain on the public record without first offering the taxpayer an administrative hearing pursuant to section 6330.  A taxpayer who fails to participate in such a hearing may expect to receive

---

[6]  In contrast, the procedure involving the conduct of the meeting is informal.  See Davis v. Commissioner, 115 T.C. 35, 41 (2000), where sec. 7521(a) was not considered.

a notice of determination that the Commissioner's proposed collection action is appropriate.

Third, respondent's interpretation of section 7521(a)(1) in denying the taxpayer's right to audio record would serve to undermine the safeguards in IRS collection actions that Congress created in section 6330 with the enactment of the Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, 112 Stat. 685.  See S. Rept. 105-174, at 67-69 (1998), 1998-3 C.B. 537, 603-605; H. Conf. Rept. 105-599, at 263-266 (1998), 1998-3 C.B. 755, 1017-1020.  Significantly, there is nothing in section 6330 or in the legislative history of that section to suggest that Congress did not intend to afford taxpayers the right, consistent with section 7521(a)(1), to audio record administrative hearings in collection actions.

Fourth, respondent's interpretation of section 7521(a)(1) would lead to the anomalous result of allowing the audio recording of Examination Division interviews, which are proceedings that we typically do not review, see Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324, 327 (1974), but not allowing the recording of section 6330 hearings, which are proceedings that we are statutorily charged with reviewing, see sec. 6330(d)(1).

Fifth, respondent's interpretation of section 7521(a)(1) would complicate judicial review of the determination made by the

Appeals Office with respect to the Commissioner's proposed levy or filing of the notice of Federal tax lien.  For example, when a taxpayer's underlying tax liability is not properly at issue in the administrative hearing, we review the Appeals Office's determination for abuse of discretion.  Lunsford v. Commissioner, 117 T.C. 183, 185 (2001).  Having a transcript of the administrative hearing would certainly facilitate that review.  Cf. Mesa Oil, Inc. v. United States, 86 AFTR 2d 2000-7312, 2001-1 USTC par. 50130 (D. Colo. 2000) (holding, without explicit consideration of section 7521(a)(1), that a verbatim recording of a section 6330 hearing was necessary in that case to have a judicially reviewable administrative record).

In addition, when reviewing for abuse of discretion, we generally consider "only arguments, issues, and other matter that were raised at the collection hearing or otherwise brought to the attention of the Appeals Office".  Magana v. Commissioner, 118 T.C. 488, 493 (2002).  Having a transcript would eliminate a possible dispute between the parties concerning the scope of the issues that were raised by the taxpayer in the administrative hearing.  Moreover, not having a transcript may contravene the intent of Congress in providing for a fair and impartial administrative hearing and may have a negative impact on this Court's review of the Appeals Office determination.

Finally, we observe that section 301.6320-1(d)(2), Q&A-D6, Proced. & Admin. Regs., and section 301.6330-1(d)(2), Q&A-D6, Proced. & Admin. Regs., state as follows: "A transcript or recording of any face-to-face meeting or conversation between an Appeals officer or employee and the taxpayer or the taxpayer's representative is not required". This statement appears in the context of a description, in general terms, of the conduct of a section 6330 hearing. In the instant case, we need not and do not decide whether every section 6330 hearing must be recorded. Instead, we decide only whether a taxpayer who seeks to audio record a section 6330 hearing has the right to do so by virtue of section 7521(a)(1). In answering that inquiry in the affirmative, it is unnecessary to decide in this case whether the cited regulations are invalid.

## Conclusion

Accordingly, we hold that, pursuant to section 7521(a)(1), petitioner is entitled to audio record his section 6330 hearing with the Appeals Office.

Respondent's counsel acknowledged at oral argument on the motion for summary judgment that, if the Court decides the audio recording issue against respondent, the proper action would be to remand the case and allow petitioner to have a hearing that he could record. Therefore, in these circumstances, we shall remand this case to respondent's Appeals Office with direction that

petitioner be offered a section 6330 hearing that may be audio recorded pursuant to section 7521(a)(1). We shall withhold action on respondent's motion for summary judgment to permit the record to be supplemented. In ordering this remand, we admonish petitioner that, if he persists in making frivolous and groundless tax protester arguments at the audio recorded hearing rather than raising relevant issues, as specified in section 6330(c)(2), relating to the unpaid tax or the proposed levy, the Court will grant respondent's motion for summary judgment and impose a penalty against him pursuant to section 6673(a)(1). See Pierson v. Commissioner, 115 T.C. 576, 580-581 (2000); Keene v. Commissioner, T.C. Memo. 2002-277.

Our conclusion in this case that petitioner is entitled to audio record his section 6330 hearing with the Appeals Office is not inconsistent with Kemper v. Commissioner, T.C. Memo. 2003-195, decided this day. Indeed, the two cases are different. In Kemper, the taxpayers chose to participate in the Appeals Office hearing, and, subsequently, in filing their petition with this Court, they included not only a section 7521(a)(1) argument, but also arguments that were frivolous or groundless. By contrast, no Appeals Office hearing was held in this case because of petitioner's insistence that it be recorded, and the petition raised only the section 7521(a)(1) issue. Because of the narrow scope of the pleadings in the present case, respondent has

acknowledged that, if the Court should decide the section 7521(a)(1) issue in petitioner's favor, this case should be remanded in order to permit a recorded hearing.  In Kemper, the pleadings were not narrow in scope, and the Court was able to address all of the nonsection 7521(a)(1) issues pleaded by the taxpayers without the need for remanding the case to develop such issues at an Appeals Office hearing.

To reflect the foregoing,

An appropriate order

will be issued.

Reviewed by the Court.

WELLS, GERBER, COLVIN, HALPERN, LARO, FOLEY, VASQUEZ, GALE, THORNTON, MARVEL, HAINES, GOEKE, and WHERRY, JJ., agree with this majority opinion.

HALPERN, J., concurring:  I agree with the majority that section 7521(a)(1) entitles a taxpayer to make an audio recording of ("to record") any oral interview constituting part (or all) of the hearing required by section 6330(b).  I write separately to explain why it is within our authority to enforce that entitlement and why, in some cases, we should not exercise that authority.

With certain restrictions, and subject to certain conditions, not here relevant, section 7521(a)(1) makes it the duty of any officer or employee of the Internal Revenue Service to allow a taxpayer to record any in-person interview relating to the determination or collection of any tax.  Although section 7521(a)(1) establishes a duty, and a corresponding right, it provides no sanction for violation of that duty or procedure for enforcement of that right.  And while the Supreme Court has said: "There is no presumption or general rule that for every duty imposed upon * * * the Government * * * there must exist some corollary punitive sanction for departures or omissions, even if negligent", United States v. Montalvo-Murillo, 495 U.S. 711, 717 (1990), section 706 of the Administrative Procedure Act (the APA), 5 U.S.C. secs. 551–559, 701–706 (2000) (hereafter, sections of which are cited as APA "sec. _") provides, in pertinent part, that a court reviewing an agency adjudication (which a

determination made under section 6330(c)(3) is[1]) "shall * * * hold unlawful and set aside agency action * * * found to be * * * without observance of procedure required by law". We thus have our authority for refusing to sustain a determination made under section 6330 when the Appeals Officer has refused to allow the taxpayer to record an in-person interview.

APA sec. 706 concludes, however: "In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and <u>due account shall be taken of the rule of prejudicial error</u>." (Emphasis added.) The "rule of prejudicial error" (otherwise the doctrine of harmless error), as applied to an administrative action, provides that the reviewing court shall disregard procedural errors unless the complaining party was prejudiced thereby. See the discussion of APA sec. 706 and harmless error in <u>Nestor v. Commissioner</u>, 118 T.C. 162, 173 (2002) (Halpern, <u>J</u>., concurring). In this proceeding, petitioner did not proceed with his section 6330 hearing after the Appeals Officer refused him permission to record it, and respondent's sole ground for summary judgment is the absolute inapplicability of section 7521(a)(1) to a section 6330 hearing. Respondent asked that, if we reject his argument (which we do), we remand the case so that petitioner could be accorded a hearing that he

---

[1] See <u>Lunsford v. Commissioner</u>, 117 T.C. 159, 170-171 (2001) (Halpern, <u>J</u>., concurring).

could record.  For that reason, we need not determine whether the Appeals Officer's initial refusal to allow recording is harmless error.

In Kemper v. Commissioner, T.C. Memo. 2003-195, decided this day, the taxpayer husband was denied the right to record his meeting with the Appeals Office but attended anyway.  Judge Chiechi acknowledges that here (in Keene) we hold that section 7521(a) requires the Appeals Office to allow a taxpayer to record a section 6330 hearing, yet she concludes that it is unnecessary, and would be unproductive, to remand her case for another, recorded hearing.  She relies on Lunsford v. Commissioner, 117 T.C. 183 (2001), in which, it appears to me, we concluded that the Appeals Officer did not err by refusing to consider meritless arguments.  Undoubtedly (given our holding in this case), the Appeals Office in Kemper did err in not permitting the taxpayer husband to record his meeting.  Nevertheless, the burden is on the party seeking judicial review of an agency action to demonstrate prejudice from any error.  DSE, Inc. v. United States, 169 F.3d 21, 31 (D.C. Cir. 1999).  Since Judge Chiechi finds that the taxpayers in Kemper advance nothing but frivolous arguments and groundless claims, I fail to see how they are prejudiced by the Appeals Office's error in failing to allow the taxpayer husband to record his meeting.  I would reach the same result in Kemper as Judge Chiechi, but I would arrive there by a

different path.

GALE and MARVEL, <u>JJ</u>., agree with this concurring opinion.

VASQUEZ, J., concurring:  I agree with the majority opinion;
however, I write separately to address two additional points.

1.    We Are Not Invalidating the Regulations

The majority opinion does not invalidate section 301.6320-
1(d)(2) or 301.6330-1(d)(2), Q&A-D6, Proced. & Admin. Regs.
Contra J. Swift's dissenting op. pp. 34-36.  In both sections
301.6320-1(d)(2) and 301.6330-1(d)(2), Q-D6, Proced. & Admin.
Regs., asks:  "How are CDP hearings conducted?"  In both sections
301.6320-1(d)(2) and 301.6330-1(d)(2), A-D6, Proced. & Admin.
Regs., answers, in pertinent part:

> CDP hearings are much like Collection Appeal Program
> (CAP) hearings in that they are informal in nature and
> do not require the Appeals officer or employee and the
> taxpayer, or the taxpayer's representative, to hold a
> face-to-face meeting.  A CDP hearing may, but is not
> required to, consist of a face-to-face meeting, one or
> more written or oral communications between an Appeals
> officer or employee and the taxpayer or the taxpayer's
> representative, or some combination thereof.  A
> transcript or recording of any face-to-face meeting or
> conversation between an Appeals officer or employee and
> the taxpayer or the taxpayer's representative is not
> required. * * *

The "is not required" language contained in the regulations means
that the actions described therein are permissible but not
mandatory.

The regulations first provide that a face-to-face meeting is
not required.  This, however, does not prohibit face-to-face
meetings--many section 6330 hearings are face-to-face meetings.
The regulations simply provide that it is not mandatory that a

section 6330 hearing be a face-to-face meeting.

Likewise, the regulations do not prohibit recording or transcription of any face-to-face meeting or conversation, they merely provide that a recording or transcription of the section 6330 hearing is <u>not required</u>. In other words, recording or transcription of the section 6330 hearing is not mandatory; however, it is permissible.

Furthermore, allowing taxpayers to record the hearing does not require that the Commissioner do so as well. Although the Commissioner also may choose to record the hearing, sec. 7521(a)(2), just because the taxpayer records the hearing this does not require the Commissioner also to record it.[1]

If the Secretary had sought to prohibit recordings and transcriptions (and face-to-face meetings for that matter), he could have chosen such phrases as a recording "is not allowed", "is not permitted", "is prohibited", or "shall not be made". He did not. The regulations instead contain the language "is not required" which permits, but does not mandate, a recording.[2]

_____

[1] I realize, however, as a practical matter that if a taxpayer records the hearing the Commissioner will likely record it also.

[2] Other answers contained in sec. 301.6330-1(d)(2), Proced. & Admin. Regs. contain "mandatory" language. Sec. 301.6330-1(d)(2), A-D1, Proced. & Admin. Regs. ("The taxpayer <u>is not entitled</u> to another CDP hearing under section 6330 if the additional assessment represents accrual of interest, accrual of penalties, or both."), A-D5, Proced. & Admin. Regs. ("The

(continued...)

## 2.   Welcoming a Transcript

Having a transcript of the section 6330 hearing will allow us to perform better the review provided to taxpayers by section 6330(d).

Until now, in order to determine what issues taxpayers raised at the section 6330 hearing, the Court was faced with "he said-she said" situations--needless "credibility contests" between the taxpayer and the Appeals officer.  In many cases this contest was not fully developed because the only evidence submitted to determine what issues were raised at the hearing was the notice of determination.

I have tried a number of cases in which it was difficult to determine what issues the taxpayer raised at the section 6330 hearing.  Sometimes it is obvious that the Appeals officer had extreme difficulty understanding what issues the taxpayer raised at the hearing.  In those cases, we were left merely with the confusing testimony of the taxpayer and the Appeals officer's testimony regarding what issues he or she "believed" the taxpayer raised.

Instead of merely having the notice of determination or the

---

²(...continued)
taxpayer <u>must</u> sign a written waiver."), and A-D7, Proced. & Admin. Regs. ("The taxpayer <u>must be offered</u> an opportunity for a hearing at the Appeals office closest to [sic] taxpayer's residence or, in the case of a business taxpayer, the taxpayer's principal place of business.") (Emphasis added.)

testimony of witnesses as evidence of what issues the taxpayer raised at the hearing, now the parties will be able to submit as evidence a transcript of the hearing. In <u>Bourbeau v. Commissioner</u>, T.C. Memo. 2003-117, the taxpayer and the Commissioner recorded the section 6330 hearing and a court reporter transcribed the hearing. The taxpayer attached a copy of the transcript to his amended petition, and the Commissioner attached a copy of the transcript to his motion for summary judgment. I found the transcript of the hearing to be extremely helpful in rendering a decision in <u>Bourbeau</u>--especially in the context of a pretrial motion. The transcript made it clear what issues the taxpayer in <u>Bourbeau</u> did, and did not, raise at the hearing. See also <u>Struhar v. Commissioner</u>, T.C. Memo. 2003-147 (in which a tape recording of the taxpayer's section 6330 hearing helped the Court decide what transpired at the hearing). I look forward to such clarity in the future.

LARO, FOLEY, MARVEL, and GOEKE, <u>JJ</u>., agree with this concurring opinion.

WHERRY, J., concurring:  Respondent has taken the position that section 7521 does not apply to the hearings afforded under sections 6320 and 6330, on grounds that such hearings are not "interviews" within the meaning of section 7521.  The majority rightly concludes, relying in large part on the ordinary meaning of the term "interview", that taxpayers are entitled to make audio recordings of section 6320 and 6330 hearings.  I write separately to highlight several additional reasons why the majority is correct.

First, it is significant that the express language of section 7521 grants a right which turns on the subject matter of the interview and not on either (1) the particular function within the Internal Revenue Service (Service) of the officer or employee conducting the interview or (2) the voluntary or involuntary nature of the interview.  The statute requires the Service to permit taping whenever an interview is held relating to the determination or collection of tax.

Second, neither legislative history nor administrative pronouncements directs a different result.  Legislative history with respect to section 7521 expressly covered the "initial in-person audit interviews" and "initial in-person collection interviews".  H. Conf. Rept. 100-1104, at 212-214 (1988), 1988-3 C.B. 473, 702-704.  The Service subsequently took the following administrative position in defining "taxpayer interview":

For purposes of section 7520 of the Code [later redesignated section 7521], the term "taxpayer interview" means a meeting between an officer or employee of the Examination function, the Employee Plans and Exempt Organization function, or the Collection function of the Service, and a taxpayer or authorized representative, as defined in section 7520(b)(2), when the determination or the collection of any tax is at issue.

* * * * * * *

LEGAL EFFECT: This document serves as an "administrative pronouncement" as that term is described in section 1.6661-3(b)(2) of Income Tax Regulations and may be relied upon to the same extent as a revenue ruling or revenue procedure. [Notice 89-51, 1989-1 C.B. 691 (Notice 89-51).]

Because the Office of Appeals is typically treated by the Service as an independent function, separate and distinct from the Examination, Employee Plans and Exempt Organization, and Collection functions, respondent maintains that a hearing with an Appeals officer is not an in-person interview within the ambit of section 7521. I do not agree with this contention. As to hearings under sections 6320 and 6330, Appeals, although separate, is in my view an integral component of the overall Examination, Employee Plans and Exempt Organization, and Collection functions.

Notice 89-51 is not controlling here since, by its own terms, its legal effect is similar to that of revenue rulings and revenue procedures. This Court and the Court of Appeals for the Ninth Circuit, to which appeal in the instant case would normally lie, have indicated that revenue rulings "do not rise to the

dignity of those 'rules and regulations' which under the authority of sec. 7805(a) are prescribed by respondent 'with the approval of the Secretary.'  Sec. 301.7805-1(a), Proced. & Admin. Regs."  Estate of Lang v. Commissioner, 64 T.C. 404, 406-407 & n.4 (1975), affd. in part on this issue and revd. in part on other grounds 613 F.2d 770 (9th Cir. 1980); see also United States v. Mead Corp., 533 U.S. 218, 228 (2001).

Moreover, notwithstanding Notice 89-51, the Service until May 2002 preempted litigation as to its construction of section 7521 by providing taxpayers with the right to record Appeals conferences or hearings and, in the process, explicitly recognized the integral role played by Appeals in the Examination, Employee Plans and Exempt Organization, and Collection functions.  See 5 Administration, Internal Revenue Manual (CCH), sec. 8626.1, at 25,784 (e.g., 10-23-91 revision), which provided:

General Guidelines

(1) The audio recording of an Appeals conference is generally permitted, if the taxpayer, or the taxpayer's authorized representative requests it, and supplies the recording equipment.  In such cases, the appeals officer will also make an audio recording of the conference with IRS equipment.

(2) IRC 7521 (formerly IRC 7520) provides that taxpayers may make audio recordings of interviews with the IRS that determine liability or collectibility. Although Appeals conferences differ in nature from taxpayer interviews in the auditing or collecting functions, Appeals still decides liability or collectibility on cases in which those issues have been

referred to us. Procedures for making audio recordings are described in Notice 89-51, 1989-1 C.B., and Appeals employees will follow the provisions of Notice 89-51 when allowing recordings in cases within Appeals jurisdiction. [Emphasis added.]

In fact, Appeals officers from time to time have performed limited audit functions when necessary to expediently resolve tax cases. Further, in recent years, both Congress and the Service have increasingly utilized Appeals officers and settlement officers during the examination and collection phases of a tax case. See, e.g., secs. 6320, 6330, 7123; see also Rev. Proc. 2003-41, 2003-25 I.R.B. 1047 (fast-track mediation procedures); Rev. Proc. 2003-40, 2003-25 I.R.B. 1044 (fast-track settlement procedures); Announcement 2003-36, 2003-25 I.R.B. 1093 (tax-exempt bond mediation program); Rev. Proc. 2002-67, 2002-43 I.R.B. 733 (tax shelter settlement initiative); Rev. Proc. 2002-52, 2002-31 I.R.B. 242 (simultaneous Appeals consideration and competent authority assistance procedure); I.R.S. News Release IR-2000-42 (June 27, 2000) (Mutually Accelerated Appeals Process for coordinated examinations of large corporate taxpayers); Rev. Proc. 99-28, 1999-2 C.B. 109 (procedures for early referral of "unresolved issues from the Examination or Collection Division to the Office of Appeals"). Given this involvement of Appeals in the Examination, Employee Plans and Exempt Organizations, and Collection functions, section 7521 cannot logically be interpreted as properly excluding the Appeals Office simply

because it _is_ the Appeals Office.[1]

When Congress enacted sections 6320 and 6330 in 1998, section 7521(a), permitting taxpayers to record any in-person interviews relating to the determination or collection of any tax, was already 10 years old. Admittedly, Congress could have enacted sections 6320 and 6330 with the assumption that the rights granted in section 7521, as those rights apply to section 6320 and 6330 Appeals hearings, would be governed by Notice 89-51. However, it seems to me more likely that Congress, if it considered this issue, would have assumed that the right to

---

[1] While the Service Litigation Guideline Memorandum GL-17 (GL-17) is more explicit in stating that it is the Service's position "that section 7521 does not apply to an administrative appeals conference", it is a litigating position not controlling on this Court. The authority cited in GL-17 for excluding Appeals conferences from sec. 7521 is Notice 89-51. As noted above, I find that authority unpersuasive.

GL-17 also makes a distinction between those third-party interviews where a witness is compelled to testify by legal process, such as a summons or subpoena, vis-a-vis those situations where the witness testifies voluntarily. The memorandum notes that pursuant to the Administrative Procedures Act (APA), 5 U.S.C. secs. 551-559, 701-706 (2000), if the testimony of the witness was compelled by legal process, recording should be allowed since that witness would under APA sec. 555(c) be entitled, at his or her cost, to a copy of the official transcript of his or her testimony.

The compelled versus voluntary distinction, however, is irrelevant to taxpayer interviews which are governed by sec. 7521. The result under that section should not be affected by whether or not the taxpayer interview was compelled by legal process or was voluntary. Sec. 7521, unlike APA sec. 555(c), does not differentiate between voluntary and compelled taxpayer interviews.

record in-person interviews, as applied to section 6320 and 6330 Appeals hearings, would be administered by the Service in the same manner as the Service had for the 10 years since its enactment administered section 7521. In any event, because taxpayers had the right to tape Appeals proceedings at the time sections 6320 and 6330 were enacted, nothing can be presumed from Congress's silence regarding the right to record these hearings.

Third, several considerations of fairness or practicality support the taxpayer's right to record hearings under section 6320 or 6330. In particular, it is noteworthy that both section 7521 and sections 6320 and 6330 were enacted to add to the taxpayer's procedural rights. The usefulness of a transcript for purposes of review of sections 6320 and 6330 proceedings also cannot be ignored. Lastly, the concerns apparently generating the Service's retraction of recording rights in the Appeals context can perhaps be handled effectively in ways less drastic than a complete curtailment.

GERBER, LARO, FOLEY, MARVEL, and GOEKE, <u>JJ</u>., agree with this concurring opinion.

SWIFT, J., dissenting:  I agree with the Lunsford treatment
of the taxpayers' frivolous arguments that is reflected in the
Kemper opinion being released simultaneously herewith.  Kemper v.
Commissioner, T.C. Memo. 2003-195.  In Kemper, we conclude,
because of the frivolous nature of the taxpayers' underlying
arguments, that the Court need not address the taxpayers'
arguments regarding the recording under section 7521 of
collection due process (CDP) Appeals hearings.  The same approach
should be utilized herein to dispose of Keene's underlying
frivolous arguments to the collection action proposed by
respondent.[1]

In addition to the grounds set forth herein in Judge
Chiechi's dissenting opinion, as the basis for my dissent I
respectfully add the following.

The Regulations

Q&A-D6 of both sections 301.6320-1(d)(2) and 301.6330-
1(d)(2), Proced. & Admin. Regs., provides that in the context of
CDP Appeals hearings the IRS is not required to record "any"
taxpayer conversation with an Appeals officer.  In appropriate
cases, the IRS may choose to do so and may permit taxpayers to do
so, but, under the regulations, the IRS may not be required in
"any" case to record a CDP Appeals hearing, nor is the IRS

_____

[1]    Under Lunsford v. Commissioner, 117 T.C. 183, 188-189
(2001), generally frivolous CDP cases can and should be dealt
with summarily by the courts.

required to permit taxpayers to do so.  Procedure and

Administrative regulations sections 301.6320-1(d)(2) and

301.6330-1(d)(2) provide identically as follows:

> A-D6.  The formal hearing procedures required under the Administrative Procedure Act, 5 U.S.C. 551 et seq., do not apply to CDP hearings.  CDP hearings are much like Collection Appeal Program (CAP) hearings in that they are informal in nature and do not require the Appeals officer or employee and the taxpayer, or the taxpayer's representative, to hold a face-to-face meeting.  A CDP hearing may, but is not required to, consist of a face-to-face meeting, one or more written or oral communications between an Appeals officer or employee and the taxpayer or the taxpayer's representative, or some combination thereof.  A transcript or recording of any face-to-face meeting or conversation between an Appeals officer or employee and the taxpayer or the taxpayer's representative is not required.  The taxpayer or the taxpayer's representative does not have the right to subpoena and examine witnesses at a CDP hearing.

I interpret the above regulations broadly to provide a rule

that the recording of CDP Appeals hearings may not be required

regardless of whom it is that physically is to provide the

recording equipment (the IRS or the taxpayer) and regardless of

whom it is that technically is to make the recording (the IRS or

the taxpayer).

Contrary to the regulations as I read them, <u>Keene</u> holds in

the affirmative, majority op. p. 17, that the IRS was required to

allow Keene to record his CDP Appeals hearing and orders a new

hearing be scheduled for Keene that is to be recorded.

This opinion effectively invalidates the above regulations.

Recent cases in the Federal District Courts have treated taxpayers' requests to tape record CDP Appeals hearings as discretionary with the IRS and have treated taxpayers' refusals to participate in the CDP Appeals hearings unless they were permitted to tape record these hearings as a waiver of the taxpayers' right to a face-to-face hearing. See Muhammad v. United States, 91 AFTR 2d 1985, at 1987 (D.S.C. 2003); Henry v. Bronstein, 90 AFTR 2d 7134, at 7135, 2002-2 USTC par. 50,781, at 86,147 (D. Md. 2002). In one recent case, Rennie v. IRS, 216 F. Supp. 2d 1078 (E.D. Cal. 2002), the District Court also noted the mischief taxpayers may create with amateur, uncertified transcripts of Appeals hearings, stating as follows:

> Also attached to the Complaint is what purports to be a transcript of the Collection Due Process Hearing. The hearing was tape recorded by plaintiff and he has prepared the transcript of it. The transcript is not certified. Moreover, from the court's research, the Collection Due Process hearings are supposed to be informal and there is not [a] requirement that the hearings be recorded. [Id. at 1079 n.1.]

Frivolous Arguments

Keene's frivolous arguments are well documented. In an attachment to Keene's CDP Appeals hearing request, Keene provides a detailed, single-spaced, multipage explanation of the underlying arguments for his appeal of respondent's proposed collection action. Keene's lengthy explanation is full of scripted, frivolous, tax protester arguments. Therein, Keene

claims that his rights as a taxpayer were ignored by the IRS from the beginning, and he asserts that the only acceptable remedy is for the IRS to "start all over again".  He states as follows:

> The IRS has ignored most of my rights even though I have pointed this out, in detail, time after time in letters originating as far back as 11/7/1991.  I have carefully documented the IRS' total disregard of my rights to date.  Should the IRS deny this request for a due process hearing it will only be adding to the overwhelming evidence I have accumulated showing the IRS' illegal denial of my rights to hearings and information.
>
> Now, should you [the Appeals officer], finally decide to grant me a simple hearing at this very late stage in the due process system I will expect you to find that this entire matter, for the tax period 1040 ending 12/31/1991, be remanded back to the very beginning of this process.  This remand must go back to include all of the hearings and all of the information due me as outlined in my previous letters.  Otherwise my rights will have been violated.  * * *

The written explanation attached to Keene's CDP hearing request itself provides the Court with an adequate record of Keene's arguments that serve as the underlying basis for his challenge to respondent's proposed collection action.  A tape recording to establish that record is not necessary.  It is overwhelmingly clear that there is no merit to Keene's underlying arguments, and I believe that, under Lunsford v. Commissioner, 117 T.C. 183 (2001), this Court ought to dispose of Keene's challenge to respondent's proposed collection action summarily and without deciding the section 7521(a)(1) issue (i.e., the approach taken in Kemper v. Commissioner, supra).

At the most, if some delay is to be tolerated in disposing of Keene's petition challenging respondent's proposed collection action, an order should be issued asking Keene to advise the Court in writing, within a specified time period, what underlying arguments he would make (if he were given another opportunity to have a CDP Appeals hearing and to have the hearing recorded) that are not already reflected in the referred-to written attachment to his CDP hearing request. If Keene files a response to such an order containing only frivolous arguments, this case could easily be disposed of without ever addressing the legal issue raised under section 7521(a)(1).

I acknowledge that, in the few nonprotester CDP cases that seem to exist, recorded transcripts of CDP Appeals hearings may be helpful, and nothing that we adopt in the Kemper or Keene opinions will prevent the IRS and taxpayers from agreeing to record CDP Appeals hearings in appropriate situations.

In summary, to conclude that the IRS should be required to record CDP Appeals hearings or to permit taxpayers to record such hearings -- whenever taxpayers make such requests and regardless of how difficult the taxpayers and how frivolous their underlying arguments -- strikes me as contrary to the above regulations, as inappropriate judicial meddling with respondent's Appeals hearings, as inefficient use of judicial resources, and as conducive to further delay in the collection of taxes the Federal Government desperately needs.

CHIECHI, J., dissenting:  In holding that section 7521(a)(1) requires respondent to allow petitioner to make an audio recording of his section 6330(b) Appeals Office hearing, the majority fails to apply the rules of statutory construction on which the majority claims to rely.  In remanding this case to Appeals in order to allow petitioner to have a hearing that he may audio record, the majority has rewarded the delaying tactics of petitioner, who has a long history of raising frivolous and/or groundless reasons why he claims he owes no Federal income tax (tax),[1] has rewarded his noncompliance with Rule 331, and has caused an unwarranted delay in the instant proceedings.  I dissent from all the actions of the majority.

In order to resolve the issue whether section 7521(a)(1) requires respondent to allow petitioner to make an audio recording of his section 6330(b) Appeals Office hearing, it is necessary to determine whether the phrase "in-person interview" used in that section includes a hearing before Appeals under section 6330(b) (and section 6320(b)).  In order to resolve that question, it first is necessary to determine whether section 7521(a)(1) requires the Internal Revenue Service (IRS) to allow a taxpayer to make an audio recording of a hearing or conference

---

[1]As an illustration of petitioner's past conduct, see Keene v. Commissioner, T.C. Memo. 2002-277, where the Court granted summary judgment and imposed a penalty under sec. 6673(a)(1) in the amount of $5,000.

before Appeals outside the context of section 6330(b) (and section 6320(b)). That is because: (1) Section 6330(b) (and section 6320(b)) was not even part of the Internal Revenue Code (Code) when Congress enacted section 7521(a)(1) into the Code in 1988; and (2) we concluded in Davis v. Commissioner, 115 T.C. 35, 41 (2000), that the type of hearing by Appeals that Congress contemplated when it enacted section 6330(b) is "the type of informal administrative Appeals hearing that has been historically conducted by Appeals", which is the administrative office of last resort for taxpayers.[2]

---

[2]I disagree with the suggestion in footnote 6 of the majority opinion that Davis v. Commissioner, 115 T.C. 35 (2000), addressed only the procedure involving the conduct of a hearing before Appeals under sec. 6330(b) (and sec. 6320(b)). Although the ultimate holding in Davis was that a hearing before Appeals pursuant to sec. 6330 does not include the right to subpoena witnesses, the following passage makes it clear that Davis focused not only on the procedure but also on the nature and function of Appeals:

> When Congress enacted section 6330 and required that taxpayers be given an opportunity to seek a pre-levy hearing with Appeals, Congress was fully aware of the existing nature and function of Appeals. Nothing in section 6330 or the legislative history suggests that Congress intended to alter the nature of an Appeals hearing so as to compel the attendance or examination of witnesses. * * * The references in section 6330 to a hearing by Appeals indicate that Congress contemplated the type of informal administrative Appeals hearing that has been historically conducted by Appeals and prescribed by section 601.106(c), Statement of Procedural Rules.

Davis v. Commissioner, supra at 41.

(continued...)

Congress enacted all the provisions of section 7521, including section 7521(a)(1), as part of the Technical and Miscellaneous Revenue Act of 1988 (TAMRA), Pub. L. 100-647, 102 Stat. 3342.  Congress prescribed in section 7521 several procedures involving taxpayer interviews.[3]  All of those procedures relate to the same taxpayer interviews; i.e., the same "in-person interviews".

It was not until 1998, 10 years after Congress made section 7521 part of the Code, that Congress enacted section 6330 relating to proposed levies (and section 6320 relating to liens) as part of the Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, 112 Stat. 685, in order to give taxpayers certain rights, including the right to a hearing before the Appeals Office, sec. 6330(b) (relating to proposed levies);

_____

[2](...continued)
Assuming arguendo that the majority were correct in suggesting that Davis addressed only the procedure involving the conduct of an Appeals hearing under sec. 6330(b) (and sec. 6320(b)), the right to make an audio recording at an "in-person interview" provided in sec. 7521(a)(1) relates only to a procedure involving the conduct of such an "in-person interview". As discussed below, Congress enacted sec. 7521(a)(1) into the Code as one of several procedures involving "in-person interviews" set forth in sec. 7521.  Indeed, sec. 7521 is entitled "PROCEDURES INVOLVING TAXPAYER INTERVIEWS".  See H. Conf. Rept. 100-1104, at 212 (1988), 1988-3 C.B. 473, 702.

[3]Sec. 7521 sets forth procedures regarding "Recording of Interviews", sec. 7521(a), "Safeguards" and "Right of Consultation" with respect to such interviews, sec. 7521(b)(1) and (2), and "Representatives Holding Power of Attorney" who appear at such interviews, sec. 7521(c).

sec. 6320(b) (relating to liens), and the right to Court review of a determination made by that office under section 6330(c), sec. 6330(d)(1). Consequently, in order to analyze properly the meaning of the phrase "in-person interview" in section 7521(a)(1), it is necessary to undertake such an analysis in the context of hearings or conferences historically conducted before Appeals, which were extant in 1988 when Congress enacted section 7521 as part of TAMRA and which we held in Davis v. Commissioner, supra, were the types of informal administrative Appeals hearings that Congress contemplated when it enacted section 6330(b). It is inappropriate to analyze, as the majority does, the meaning of the phrase "in-person interview" in the context of reasons grounded in the operation and purpose of section 6330 (and section 6320), which Congress did not make part of the Code until 10 years after it enacted section 7521.

The majority begins its analysis of the meaning of the phrase "in-person interview" in section 7521(a)(1) by stating:

> Neither section 7521(a)(1) nor the legislative history directly and clearly defines or otherwise describes the term "in-person interview". Where a term is not defined in the statute, it is appropriate to accord the term its "ordinary meaning". Northwest Forest Resource Council v. Glickman, 82 F.3d 825, 833 (9th Cir. 1996). And when there is no indication that Congress intended a specific legal meaning for the term, courts may look to sources such as dictionaries for a definition. Muscarello v. United States, 524 U.S. 125, 127-132 (1998); see also Huntsberry v. Commissioner, 83 T.C. 742, 747-748 (1984), in which the Court stated that "where a statute is clear on its face, * * * we would require unequivocal evidence of legislative purpose

> before construing the statute so as to override the plain meaning of the words used therein." [Fn. ref. omitted.]

Majority op. pp. 10-11.

The majority fails to apply the rules of statutory construction on which it claims to rely when, in determining the meaning of the phrase "in-person interview" in section 7521(a)(1), it turns to the dictionary definition of the term "interview". Although I agree with the majority that Congress did not "directly * * * define" the phrase "in-person interview" in section 7521(a)(1) or any other provision in section 7521 or in the legislative history, I disagree with the majority that neither the statute nor the legislative history "clearly * * * otherwise describes" that phrase. Section 7521 itself and the legislative history of that section clearly describe what Congress intended when it used the phrase "in-person interview".

In determining what Congress had in mind when it used the phrase "in-person interview" in section 7521(a)(1), the majority improperly focuses only on section 7521(a)(1) for guidance. In determining what Congress intended, section 7521(a)(1) may not be read in a vacuum. It must be examined in the context of the entire statute (i.e., section 7521) that Congress enacted in 1988 for the purpose of prescribing certain procedures that it made applicable to all "in-person interviews". If the majority had undertaken such an examination, it would have become clear to the

majority what Congress meant when it used the phrase "in-person interview" in section 7521.

Section 7521(b)(1) provides:

SEC. 7521.  PROCEDURES INVOLVING TAXPAYER INTERVIEWS.

(b) Safeguards.--

    (1) Explanations of processes.--An officer or employee of the Internal Revenue Service shall before or at an initial interview provide to the taxpayer--

        (A) in the case of an in-person interview with the taxpayer relating to the determination of any tax, an explanation of the audit process and the taxpayer's rights under such process, or

        (B) in the case of an in-person interview with the taxpayer relating to the collection of any tax, an explanation of the collection process and the taxpayer's rights under such process.

Section 7521(b)(1) thus clearly describes what Congress intended when it used the phrase "in-person interview" in section 7521.

Not only section 7521 itself, but the legislative history of that section also is instructive in determining what Congress had in mind when it used the phrase "in-person interview" in section 7521(a)(1).  The conference report relating to section 7521, H. Conf. Rept. 100-1104, at 212-214 (1988), 1988-3 C.B. 473, 702-704 (conference report), provides in pertinent part:

    Prior to initial in-person audit interviews, the IRS must explain to taxpayers the audit process and taxpayers' rights under that process.  In addition, prior to initial in-person collection interviews, the IRS must explain the collection process and taxpayers' rights under that process.  For this purpose, routine telephone conversations initiated by either the taxpayer or the IRS are not considered initial

> interviews.  A written statement handed to the taxpayer at an audit or collection interview or within a short time before the interview is sufficient. * * *

H. Conf. Rept. 100-1104, at 213 (1988), 1988-3 C.B. 473, 703.

Section 7521(b)(1) and the conference report make clear that, when Congress used the phrase "in-person interview" in section 7521, it did not have in mind either the dictionary definition of the term "interview" on which the majority improperly relies or the historically voluntary and informal hearings or conferences before Appeals.  The descriptions by Congress in section 7521 itself and its legislative history leave no doubt that what Congress meant when it used the phrase "in-person interview" in section 7521, including section 7521(a)(1), is an in-person audit interview and an in-person collection interview, which take place during the audit process and the collection process, respectively, and the function of which is to investigate and determine facts relating to the determination and the collection of any tax.  Thus, it makes perfect sense that Congress decided in section 7521 to allow taxpayers, sec. 7521(a)(1), as well as the IRS, sec. 7521(a)(2), to record such types of interviews.  That is because in-person audit interviews and in-person collection interviews are interviews initiated by the IRS that taxpayers are under some compulsion to attend and that the IRS conducts for the purpose of gathering information to use in the determination of and the collection of tax,

respectively; i.e., interviews of taxpayers initiated by the examination division and by the collection division, respectively, and therefore not infrequently involuntary, which are investigative or inquisitorial in nature and which can be enforced by the issuance of an administrative summons.

In contrast to the in-person audit interviews and the in-person collection interviews that Congress intended section 7521 to address, hearings or conferences before Appeals extant at the time in 1988 Congress made section 7521 part of the Code historically were, and remain, conferences initiated by taxpayers and therefore voluntary, which are conducted in an informal setting in order to review and consider actions taken by the examination division or the collection division of the IRS and to discuss the facts and the law relating to such actions for the purpose of settling or resolving those matters without resort to litigation. See secs. 601.106 and 601.203, Statement of Procedural Rules. An Appeals officer does not have the same investigative authority that a revenue agent involved in an examination matter or a revenue officer involved in a collection matter has. Indeed, where alleged new facts are presented at Appeals that require authentication or verification, an Appeals officer may ask the examination division or the collection division of the IRS to authenticate and/or to investigate those

alleged new facts.[4]  That is because the function of the

_____

[4]Sec. 601.106(f)(5) and (6), Statement of Procedural Rules, provides in pertinent part:

(f) <u>Conference and practice requirements</u>. Practice and conference procedure before Appeals is governed by Treasury Department Circular 230 as amended (31 CFR Part 10), and the requirements of Subpart E of this part.  In addition to such rules but not in modification of them, the following rules are also applicable to practice before Appeals:

    *     *     *     *     *     *     *

(5) <u>Rule V</u>.  In order to bring an unagreed income, profits, estate, gift, or Chapter 41, 42, 43, or 44 tax case in prestatutory notice status, an employment or excise tax case, a penalty case, an Employee Plans and Exempt Organization case, a termination of taxable year assessment case, a jeopardy assessment case, or an offer in compromise before the Appeals office, the taxpayer or the taxpayer's representative should first request Appeals consideration and, when required, file with the district office (including the Foreign Operations District) or service center a written protest setting forth specifically the reasons for the refusal to accept the findings.  If the protest includes a statement of facts upon which the taxpayer relies, such statement should be declared to be true under the penalties of perjury.  The protest and any new facts, law, or arguments presented therewith will be reviewed by the receiving office for the purpose of deciding whether further development or action is required prior to referring the case to Appeals. * * *

(6) <u>Rule VI</u>.  A taxpayer cannot withhold evidence from the district director of internal revenue and expect to introduce it for the first time before Appeals, at a conference in nondocketed status, without being subject to having the case returned to the district director for reconsideration.  Where newly discovered evidence is submitted for the first time to Appeals, in a case pending in nondocketed status, that office, in the reasonable exercise of its discretion, may transmit same to the district director for his or

(continued...)

examination division and the collection division, respectively, is to investigate and determine facts relating to the determination and the collection of any tax.

Thus, it makes perfect sense that, when Congress enacted section 7521(a)(1) and the other "PROCEDURES INVOLVING TAXPAYER INTERVIEWS" set forth in section 7521, it did not intend to include hearings or conferences historically held before Appeals for the purpose of attempting to settle or otherwise resolve actions taken by the examination division or the collection division of the IRS without resort to litigation.  And it makes no sense that Congress would have required that section 7521(a)(1) and the other procedures in section 7521 apply to such hearings or conferences.  Pursuant to the majority's holding that the phrase "in-person interview" includes an Appeals hearing, not only taxpayers, see sec. 7521(a)(1), but also Appeals officers, see sec. 7521(a)(2), have the right to make an audio recording of Appeals hearings.  I believe that such audio recordings will inhibit unnecessarily and inappropriately the give-and-take that typically takes place at such hearings and conferences in order to attempt to negotiate settlements or otherwise resolve actions taken by the examination division or the collection division of the IRS without resort to litigation.

---

[4](...continued)
her consideration and comment.

In this connection, it is important to keep in mind that the majority's holding under section 7521(a)(1) applies not only to Appeals hearings held pursuant to section 6330(b) (and section 6320(b)) but also extends to all hearings and conferences before Appeals in deficiency and other contexts. The phrase "in-person interview" in section 7521 cannot be read to apply only to hearings before Appeals under section 6330(b) (and section 6320(b)). That phrase must apply to all hearings or conferences before Appeals, or to no such hearings and conferences. That is because: (1) There was no right to a section 6330 hearing (or a section 6320 hearing) in 1988 when Congress enacted section 7521 into the Code; and (2) we held in Davis v. Commissioner, 115 T.C. at 41, that "The references in section 6330 to a hearing by Appeals indicate that Congress contemplated the type of informal administrative Appeals hearing that has been historically conducted by Appeals".

It is a cardinal rule of statutory construction that, when Congress made section 6330(b) (and section 6320(b)) part of the Code in 1998, it is presumed to have been aware that it used the phrase "in-person interview" in section 7521. If Congress had intended for the hearing before Appeals under section 6330(b) (and section 6320(b)) to constitute an "in-person interview" under section 7521, it would have used that phrase in section

6330(b) (and section 6320(b)), or at least referred to section 7521.  It did neither.[5]

_____

[5]At a minimum, if Congress had intended for the Appeals hearing under sec. 6330(b) (and sec. 6320(b)) to constitute an "in-person interview" for purposes of sec. 7521, Congress would have so stated in the legislative history of sec. 6330(b) (and sec. 6320(b)).  It did not.

The fact that from 1989 until May 2002 IRS Appeals exercised its discretionary authority and permitted audio recordings of hearings before it does not mean that the IRS's position was that sec. 7521(a)(1) required such audio recordings.  That was made clear in Notice 89-51, 1989-1 C.B. 691 (Notice 89-51), and Litigation Guideline Memorandum GL-17.

Notice 89-51 states in part:

    For purposes of section 7520 of the Code [later redesignated section 7521], the term "taxpayer interview" means a meeting between an officer or employee of the Examination function, the Employee Plans and Exempt Organization function, or the Collection function of the Service, and a taxpayer or authorized representative, as defined in section 7520(b)(2), when the determination or the collection of any tax is at issue.

Litigation Guideline Memorandum GL-17 provides in part:

    It is also our position that section 7521 does not apply to an administrative appeals conference * * *

    * * * IRM 8626 does not create any right to make a verbatim recording; it simply states that the Commissioner or his/her delegate has the discretion to allow a recording. * * *

Since 1989 until May 2, 2002, when Appeals, in an unpublished internal memorandum to all Appeals Area Directors, exercised its discretionary authority to end the audio recording of conferences or hearings before Appeals that it had previously allowed, Notice 89-51 and Litigation Guideline Memorandum GL-17 represented the interpretation of the IRS that the phrase "in-person interview" in sec. 7521 does not apply to any Appeals

(continued...)

I shall not specifically address and explain why each of the various reasons set forth by the majority for its holding under section 7521(a)(1) is faulty. Suffice it to say that each of those reasons erroneously is grounded and relies upon the operation and purpose of section 6330 (and section 6320). However, I shall address several of the reasons on which the majority relies for its holding under section 7521(a)(1) because several of them are not grounded solely in the operation and purpose of section 6330 (and section 6320).

In support of its conclusion that the phrase "in-person interview" in section 7521(a)(1) includes a hearing before Appeals under section 6330(b) (and section 6320(b)), the majority states:

> respondent's interpretation of section 7521(a)(1) would lead to the anomalous result of allowing the audio recording of Examination Division interviews, which are proceedings that we typically do not review, see Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324, 327 (1974), but not allowing the recording of section 6330 hearings, which are proceedings that we are

---

[5](...continued)
conference or hearing but applies only to in-person audit interviews and in-person collection interviews. Congress is presumed to have had knowledge of that interpretation by the IRS of the phrase "in-person interview" in sec. 7521 when in 1998 it added the provisions for a hearing before Appeals in sec. 6330(b) (and sec. 6320(b)) without mentioning sec. 7521 and by using the term "hearing" instead of "interview". See Fla. Natl. Guard v. Fed. Labor Relations Auth., 699 F.2d 1082, 1087 (11th Cir. 1983) ("Congress is deemed to know the executive and judicial gloss given to certain language and thus adopts the existing interpretation unless it affirmatively acts to change the meaning.").

> statutorily charged with reviewing, see sec.
> 6330(d)(1).

Majority op. p. 15.

The foregoing statement is incorrect.  We are no more charged with reviewing "section 6330 hearings" than we are charged with reviewing "Examination Division interviews".  In the lien and levy proceeding context, we are charged with reviewing a determination of Appeals made under section 6330(c)(3).  See sec. 6330(d)(1).  That determination is set forth in the notice of determination that Appeals issues to each taxpayer who has complied with the requirements of section 6330 (and/or section 6320).  In the deficiency context, we are charged with reviewing a notice of deficiency, see sec. 6213(a); we are not charged with reviewing "Examination Division interviews".  The case cited by the majority, Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324, 327 (1974), merely holds that, in reviewing a notice of deficiency, we typically do not go behind that notice.[6]

---

[6]In reviewing a notice of deficiency under sec. 6213, our standard of review is usually de novo.  There are, however, instances in which, in reviewing a notice of deficiency, our standard of review is abuse of discretion (for example, in cases involving a change in accounting method determined by the IRS).  Regardless of whether our standard of review in a deficiency case is de novo or abuse of discretion, we typically do not go behind the notice of deficiency.  Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324, 327 (1974).

In reviewing a notice of determination under sec. 6330, our standard of review is abuse of discretion, unless the validity of the underlying tax liability is properly placed at issue, in
(continued...)

As another reason for concluding that the phrase "in-person interview" in section 7521(a)(1) includes a hearing before the Appeals Office under section 6330(b) (and section 6320(b)), the majority states:

> respondent's interpretation of section 7521(a)(1) would complicate judicial review of the determination made by the Appeals Office with respect to the Commissioner's proposed levy or filing of the notice of Federal tax lien.  For example, when a taxpayer's underlying tax liability is not properly at issue in the administrative hearing, we review the Appeals Office's determination for abuse of discretion. * * * Having a transcript of the administrative hearing would certainly facilitate that review. * * *

Majority op. pp. 15-16.

The foregoing rationale for holding that section 7521(a)(1) requires the IRS to permit a taxpayer to make an audio recording of an Appeals hearing under section 6330(b) (and section 6320(b)) is not sound.  Although having a transcript of the administrative hearing under section 6630(b) (and section 6320(b)) might "facilitate" in an appropriate case review of the Appeals' determination made under section 6330(c)(3), it is a non sequitur to conclude that, therefore, section 7521(a)(1) requires that a taxpayer have the right to make an audio recording of a hearing

---

[6](...continued)
which event our standard of review is de novo.  Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176, 181-182 (2000).  Regardless of whether our standard of review in a proposed levy (or lien) case is abuse of discretion or de novo, we typically do not go behind the notice of determination.

under section 6330(b) (and section 6320(b)). If the majority had concluded, as I believe it should have, that the phrase "in-person interview" in section 7521(a)(1) does <u>not</u> include a hearing before Appeals, the Court would be at liberty in any appropriate case under section 6330 (or section 6320), in order to "facilitate" our review of Appeals's determination under section 6330(d)(1), to remand the case in order to have a transcript of the section 6330 hearing (or section 6320 hearing). See <u>Mesa Oil, Inc. v. United States</u>, 86 AFTR 2d 2000-7312, 2001-1 USTC par. 50130 (D. Colo. 2000).

The majority also states as a ground for concluding that section 7521(a)(1) <u>requires</u> that a taxpayer have the right to make an audio recording of a hearing before Appeals that

> when reviewing for abuse of discretion, we generally consider "only arguments, issues, and other matter that were raised at the collection hearing or otherwise brought to the attention of the Appeals Office". * * * Having a transcript would eliminate a possible dispute between the parties concerning the scope of the issues that were raised by the taxpayer in the administrative hearing. Moreover, not having a transcript may contravene the intent of Congress in providing for a fair and impartial administrative hearing and may have a negative impact on this Court's review of the Appeals Office determination.

Majority op. p. 16.

The foregoing rationale is another unsound basis for the majority's holding under section 7521(a)(1). As discussed above, Congress could not have had in mind the hearing that it decided to afford to taxpayers in 1998 under section 6330(b) (and section

6320(b)) when it made section 7521 part of the Code in 1988. Moreover, as also discussed above, the desirability in certain circumstances of having a transcript of a section 6330 hearing (and a section 6320 hearing) does not answer the question whether, and does not logically lead to the conclusion that, section 7521 mandates that a taxpayer have the right to make an audio recording of a hearing before Appeals.

Having held that section 7521(a)(1) requires respondent to allow petitioner to make an audio recording of his section 6330(b) hearing, the majority concludes:

> we shall remand this case to respondent's Appeals
> Office with direction that petitioner be offered a
> section 6330 hearing that may be audio recorded
> pursuant to section 7521(a)(1).[7]

Majority op. pp. 17-18.

The result mandated by the majority is that respondent must offer another hearing under section 6330 to petitioner, who, according to the majority, has a long history of advancing tax-protester

---

[7]In reaching the result to remand for an Appeals hearing that petitioner may audio record, the majority relies on respondent's acknowledgment that if the Court were to decide the audio recording issue against respondent, the proper action would be to remand the case and allow petitioner to have a hearing that he may audio record. Respondent's position as to what the Court should do if it were to hold against respondent on the issue presented under sec. 7521(a)(1) is not binding on the Court and does not justify remanding the case to Appeals. The Court has never hesitated in the past, and the majority should not have hesitated in the instant case, to reject the IRS's (or the taxpayer's) view of what the proper action should be in the event that the Court were to resolve an issue adversely to that party.

types of contentions and arguments, so that he can make an audio recording of that hearing. Such a result is justified, according to the majority, because the IRS deprived petitioner of his procedural right under section 7521(a)(1) to make an audio recording of the hearing that Appeals previously offered to him. However, in Lunsford v. Commissioner, 117 T.C. 183 (2001), the Court (1) did not care whether the IRS had provided the taxpayers with their substantive right to a hearing under section 6330(b) and (2) refused to grant their request for relief that the Court remand the case to Appeals for a hearing. The Court justified such a result in Lunsford because "the only arguments that petitioners presented to this Court were based on legal propositions which we have previously rejected", Lunsford v. Commissioner, supra at 189, and consequently such a hearing was not "necessary or productive", id.

I believe that the result in Lunsford and the result in the instant case are irreconcilable. In an effort to reconcile such results, the majority points out that there is a difference between Lunsford and the instant case in that the petition in Lunsford alleged groundless legal arguments on which the taxpayers in Lunsford based their claim for relief for another hearing, whereas in the instant case the sole allegation in the petition relates to a procedural defect; i.e., respondent's failure to allow petitioner to make an audio recording of his

Appeals hearing.  The difference on which the majority relies to support its remand in the instant case is a distinction without significance.  We have previously reminded taxpayers who institute proposed levy (and lien) cases in the Court that Rule 331(b)(4) requires a petition for review of a determination under section 6330 to contain clear and concise assignments of "each and every error which the petitioner alleges to have been committed in the levy determination", Goza v. Commissioner, 114 T.C. 176, 183 (2000), and that that Rule provides that "any issue not raised in the assignments of error shall be deemed to be conceded", id.  See Lunsford v. Commissioner, supra at 190.

By remanding the instant case to Appeals for a hearing that petitioner may audio record, the majority is allowing petitioner to raise issues that he did not raise or plead, as required by Rule 331.  The only complaint that petitioner has about his rights under section 6330, as set forth in the petition in the instant case, is that he was not allowed to make an audio recording of his Appeals Office hearing under section 6330(b).  Certainly, petitioner does not intend to argue at the Appeals hearing ordered by the majority that Appeals erred in refusing to permit him to make an audio recording of the hearing that Appeals previously offered to him.  So what will petitioner argue at the hearing mandated by the majority?  Given petitioner's track record of advancing frivolous and/or groundless contentions and

arguments as to why he does not owe any tax, it is reasonable to presume that he will be advancing at that hearing those same types of frivolous and/or groundless contentions and arguments.

In Lunsford v. Commissioner, supra, the Court did not give the taxpayers the benefit of the doubt that they would abandon their frivolous and/or groundless arguments if they had the opportunity for another hearing. Nonetheless, the majority in the instant case is giving petitioner the benefit of the doubt by requiring Appeals to hold a hearing that petitioner may audio record because the majority presumes that, despite petitioner's long history of advancing tax-protester types of contentions and arguments, he might decide to advance at such a hearing contentions and arguments that have some basis in the facts and the law. I do not believe that the majority should have given the benefit of the doubt to petitioner. The majority should have required petitioner to amend his petition or otherwise advise the Court what contentions and arguments he intends to make at an Appeals hearing so that the Court could have determined whether such contentions and arguments are frivolous and/or groundless. Only if the Court were to determine that such contentions and arguments have a basis in the facts and the law should the majority have remanded the matter to Appeals for a hearing that the majority has held section 7521(a)(1) requires petitioner be given the opportunity to audio record. By not requiring before

remanding this matter to Appeals that petitioner amend his petition or otherwise inform the Court what contentions and arguments he intends to make at an Appeals hearing, the majority has rewarded petitioner's delaying tactics and his noncompliance with Rule 331 and has caused an unwarranted delay in the instant proceedings.

COHEN and SWIFT, <u>JJ</u>., agree with this dissenting opinion.