T.C. Memo. 2005-290


UNITED STATES TAX COURT


CREVENNE C. AND BARBARA A. CARRILLO, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 2593-04L.                    Filed December 20, 2005.


Ps filed a petition for judicial review pursuant to secs. 6320 and 6330, I.R.C., in response to determinations by R that lien and levy actions were appropriate.

Held: Because Ps have advanced groundless complaints in dispute of the notices of lien and levy, R's determination to proceed with collection action is sustained.

Held, further, a penalty under sec. 6673, I.R.C., is due from Ps and is awarded to the United States in the amount of $5,000.


Crevenne C. and Barbara A. Carrillo, pro sese.

Rollin G. Thorley, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

WHERRY, Judge:  This case arises from a petition for judicial review filed in response to Notices of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330.[1] The issues for decision are:  (1) Whether respondent may proceed with collection action as so determined, and (2) whether the Court, sua sponte, should impose a penalty under section 6673.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulations of the parties, with accompanying exhibits, are incorporated herein by this reference.

Petitioners on or about April 15, 1998, filed a joint Form 1040, U.S. Individual Income Tax Return, for the 1997 taxable year.  They reported adjusted gross income of $57,383.79, total tax of $5,126, withholding of $5,457.23, and a refund amount of $331.23.  They similarly on or about April 15, 1999, filed a joint return for 1998 reporting substantial adjusted gross income, total tax of $5,899, withholding of $8,161.58, and a refund amount of $2,262.58.  The Internal Revenue Service (IRS) assessed the reported tax for 1997 and 1998 on June 1, 1998, and May 31, 1999, respectively.

---

[1] Unless otherwise indicated, section references are to the Internal Revenue Code of 1986, as amended, and Rule references are to the Tax Court Rules of Practice and Procedure.

Petitioners thereafter filed a series of refund claims and/or amended returns with respect to their 1997 and 1998 returns.  In these documents petitioners attempted to change their reporting position to reflect zero for all pertinent items of income and deduction and to request refunds for the balance of tax withheld and not previously refunded.  The IRS issued denials of these claims and advised petitioners therein of their right to contest disallowance by an administrative appeal or by instituting suit in the U.S. District Court or U.S. Court of Federal Claims within 2 years.

Respondent assessed additional tax and interest with respect to 1997 and 1998 on August 14 and December 11, 2000, respectively.[2]  Notices of balance due for 1997 were issued on August 14, 2000, September 18, 2000, December 4, 2000, January 8, 2001, and May 27, 2002.  Notices of balance due for 1998 were issued on December 11, 2000, January 15, 2001, and May 27, 2002.

On their returns for 1999 and 2000, petitioners reported zero for all items of income and deduction and requested refunds for the full amount claimed thereon as Federal income tax withheld.  They attached to each of these returns written statements espousing their assertions that no law required them

---

[2] The record contains little information as to the circumstances surrounding these assessments.  Petitioners, however, have not separately challenged them apart from their generalized objections to liability for any income taxes.

to file a return or to pay income taxes. Respondent issued to petitioners notices of deficiency for 1999 and 2000 on May 18, 2001, and April 12, 2002, respectively. Petitioners responded to each notice with a letter acknowledging their receipt of the notice and their right to file a petition with the Tax Court but stating, inter alia: "Before I file, pay, or do anything with respect to your 'Notice,' I must first establish whether or not it was sent pursuant to law, whether or not it has the 'force and effect of law,' and whether you had any authority to send me the notice".

Petitioners at no time petitioned this Court for redetermination of the deficiencies and penalties reflected in the notices. Respondent assessed the tax, penalty, and interest amounts due for 1999 on November 26, 2001, and sent a notices of balance due on that date and on December 31, 2001. Likewise, tax, penalty, and interest for 2000 were assessed on October 21, 2002, and a notice of balance due was sent on that date.

Respondent issued to petitioners a Final Notice of Intent to Levy and Notice of Your Right to a Hearing dated December 17, 2002, with regard to the 1997, 1998, and 1999 years, and a Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320 dated December 24, 2002, with regard to the 1997 through 2000 taxable years. The latter notice reflected a total amount due for the 4 years in issue of $20,266.07.

Petitioners timely submitted a Form 12153, Request for a Collection Due Process Hearing, with respect to the two notices. They included with their Form 12153 an attachment in which they disputed the validity of, and requested that the Appeals officer have at the hearing copies of, documents pertaining to, among other things, the underlying tax liability, the assessment, the notice and demand for payment, and the verification from the Secretary that the requirements of any applicable law or procedure had been met. They concluded the attachment with the following: "This is also to remind you that I will be tape recording the CDP hearing. I will also have a court reporter, and Irwin Schiff,[3] who has my power of attorney and who will be assisting me."

Respondent on February 11, 2003, issued to petitioners a further Final Notice of Intent To Levy and Notice of Your Right to a Hearing, pertaining to their 2000 tax year.[4] Petitioners again submitted a timely Form 12153 with an attachment

---

[3] Irwin Schiff and his activities in protest of the tax laws are well known to this Court. See, e.g., Schiff v. Commissioner, T.C. Memo. 1992-183 (and cases cited therein).

[4] Respondent also on Feb. 11, 2003, apparently in inadvertence issued to petitioners' bank a notice of levy with respect to 1997, 1998, and 1999. However, the Appeals officer handling petitioners' case testified that the levy was released on account of the pending collection hearing request. Accordingly, this activity has no bearing on our review of the specific collection actions that are the subject of the instant proceeding and will not be further addressed, despite the emphasis given thereto by petitioners at trial and on brief.

substantially identical to that provided with their previous Form 12153. On May 8, 2003, an initial letter was sent to petitioners advising that their case had been received by the Las Vegas, Nevada, Appeals Office for consideration and briefly explaining the Appeals process. Petitioners responded to this letter the following day with a 45-page typewritten statement entitled "CONSTRUCTIVE LEGAL NOTICE" and purporting to "reserve all of our constitutional rights" and to set forth petitioners' arguments against collection action.

By a letter dated July 30, 2003, Anthony J. Aguiar, the Appeals officer to whom petitioners' case had been assigned scheduled a hearing for September 11, 2003, in Las Vegas, and asked that petitioners contact him within 10 days to indicate whether the date and time were convenient. Petitioners, in turn, sent two letters to the Appeals officer with respect to the scheduled hearing. In the first, dated August 8, 2003, petitioners focused on the contention that they had received no taxable income in the "constitutional sense". The letter also advised that petitioners would be recording the hearing and would have a court reporter with them as a witness. The second lengthy communication, received by the IRS on September 10, 2003, essentially reiterated the points pressed earlier in the attachments to petitioners' Forms 12153.

On September 11, 2003, the Appeals officer attempted to hold the scheduled conference with Mr. Carrillo, but Mr. Carrillo refused to proceed when he was not permitted to record the hearing.  Thereafter, on January 21, 2004, respondent issued a separate but identical Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 to each petitioner sustaining the proposed lien and levy actions.  An attachment to the notice addressed the various issues raised by petitioners, indicated that petitioners were not entitled to raise their underlying liabilities on account of failure to seek prior available recourse in the District Court (for 1997 and 1998) or Tax Court (for 1999 and 2000), and pointed out that petitioners had raised no issue as to collection alternatives.

Petitioners' petition disputing the notices of determination was filed on February 10, 2004, and reflected an address in Las Vegas, Nevada.  In general, petitioners ask that the Court declare the notices of determination "null and void".  Petitioners' complaints with respect to the administrative proceedings include the following:  No legitimate hearing under section 6330 ever took place; petitioners were not permitted to record a hearing; petitioners were denied the opportunity to raise issues they deemed "relevant" (e.g., the "existence" of the underlying tax liability); and requested documentation had not been produced (e.g., record of the assessments, statutory notice

and demand for payment, any "valid notice of deficiency", authorization under section 7401 from the Secretary for the instant collection actions, and verification from the Secretary that all applicable requirements were met). Petitioners pray that this Court declare invalid and "Nullify completely" the January 21, 2004, determination, and "not remand" the case to the IRS for a new hearing; order the Government to cease enforcement activity and release the filed notice of lien; and order the Government to reimburse petitioners for all costs incurred in submitting the instant petition.[5]

After the pleadings were closed in this case, petitioners reiterated their request that this Court declare invalid the determination at issue by means of a document and multiple attachments filed on April 5, 2004, as a motion to dismiss for lack of jurisdiction. Petitioners supplemented this motion with additional materials on April 19, 2004, and respondent filed a notice of objection on April 29, 2004. The Court denied petitioners' motion on May 13, 2004.

Petitioners thereafter served a request for admissions on respondent and filed a copy with the Court on June 1, 2004. The 30 paragraphs generally asked respondent to admit to a broad

---

[5] The Court notes that to the extent that the petition seeks reasonable administrative and/or litigation costs pursuant to sec. 7430, any such claim is premature and will not be further addressed. See Rule 231.

spectrum of alleged failures to comply with statutory requirements. Respondent filed a response denying the allegations in all material respects.

By notice issued on July 2, 2004, the instant case was set for trial at the session beginning on December 6, 2004, in Las Vegas, Nevada. Respondent then filed a motion for summary judgment and to impose a section 6673 penalty on July 22, 2004. Petitioners filed an objection to respondent's motion on August 17, 2004, wherein they principally complained about respondent's various characterizations of positions taken by petitioners as "frivolous", "groundless", or "merit less" [sic]. They also took issue with respondent's assertion that failure to allow recording of the hearing was "harmless error". The Court on September 15, 2004, issued an order denying the motion for summary judgment, ruling as set forth below:

> As respondent correctly notes in the motion for summary judgment, the issues raised by petitioners during the administrative process have been repeatedly rejected by this and other courts. Moreover, maintenance of these arguments has served as grounds for imposition of penalties under section 6673. However, the case in its current posture does present a procedural shortcoming.
>
> On July 8, 2003, this Court issued Keene v. Commissioner, 121 T.C. 8, 19 (2003), in which it was held that taxpayers are entitled, pursuant to section 7521(a)(1), to audio record section 6330 hearings. The taxpayer in that case had refused to proceed when denied the opportunity to record, and we remanded the case to allow a recorded Appeals hearing. Id. In contrast, we have distinguished, and declined to remand, cases where the administrative proceedings took

place prior to our opinion in <u>Keene v. Commissioner</u>, <u>supra</u>; where the taxpayer had participated in an Appeals Office hearing, albeit unrecorded; and where all issues raised by the taxpayer could be properly decided from the existing record.  E.g., <u>id.</u> at 19, 20; <u>Frey v. Commissioner</u>, T.C. Memo. 2004-87; <u>Durrenberger v. Commissioner</u>, T.C. Memo. 2004-44; <u>Brashear v. Commissioner</u>, T.C. Memo. 2003-196; <u>Kemper v. Commissioner</u>, T.C. Memo. 2003-195.

The circumstances of the instant case are closely analogous to those in <u>Keene v. Commissioner</u>, <u>supra</u>, and diverge from those where it was determined that remand was not necessary and would not be productive. Critically, the letter scheduling the hearing was sent on July 30, 2003, the aborted hearing was held on September 11, 2003, and the notices of determination were issued on January 21, 2004.  Although these dates are nearly a month, approximately 2 months, and more 6 months, respectively, after the opinion in <u>Keene v. Commissioner</u>, <u>supra</u>, petitioners were not afforded an opportunity for a recorded conference.  Further, because the requested face-to-face hearing was not held, there still exists a possibility that petitioners might have raised one or more nonfrivolous issues if the meeting had proceeded.

In this situation, the Court will not accept respondent's invitation to characterize the failure to allow recording as harmless error.  Hence, the Court will deny respondent's motion for summary judgment at this time.  As in <u>Keene v. Commissioner</u>, <u>supra</u> at 19, however, we admonish petitioners that if they persist in making frivolous and groundless tax protester arguments in any further proceedings with respect to this case, rather than raising relevant issues, as specified in section 6330(c)(2), the Court will consider granting a future motion for summary judgment. In such an instance, the Court would also be in a position to impose a penalty under section 6673(a)(1). * * *

Petitioners followed this denial with a motion for summary judgment of their own, filed on September 28, 2004.  They alleged that they were not given notice of the denial of their refund

claims.  After respondent filed a response, the Court denied petitioners' motion on November 15, 2004, as their claims were both factually and legally insufficient to support any relief in this proceeding.  We also cautioned petitioners to take heed of our earlier warning with regard to section 6673.

This case was called from the calendar of the trial session of the Court in Las Vegas, Nevada, on December 6, 2004, and a trial was held the following day.  At the outset, the Court explained to Mr. Carrillo, who appeared on behalf of himself and his wife, as follows:

> THE COURT:  * * *  And if you review my order which was issued in this case, Mr. Carrillo, and that order is dated September 15, 2004, denying the government's motion for summary judgment, I have already held as a matter of law that the government did fail to provide you with the right to record a hearing, which you were entitled to.
>
> So you can consider that issue established, and I believe that Mr. Thorley acknowledged that the Court as a whole had concluded that, and the government has now acquiesced in that error.
>
> The issue that you need to keep and be aware of is that in another case issued the same day as Keene, the Kemper case, the Court found that where the taxpayers are making only frivolous arguments for delay, which have been routinely rejected by our court and all higher courts, that there is no need to remand the case for a hearing if that is the only case that the taxpayer is making, unless the taxpayer is making an argument that is permitted under * * * [6330], there is no need to remand it.
>
> We can decide the case on the evidence before us, and this is your trial.  It is being recorded verbatim., word-for-word, and you can get a copy of it. And so if you have any other issues that you have not

> raised yet, or if other issues that you have not raised yet, but for which you believe are legitimate--although read my order, and I told you what I think on the ones that I have seen to date--then you should raise them here.

Mr. Carrillo, however, proceeded to rehash matters relied upon in petitioners' earlier papers and filings and failed to identify any specific colorable issues for remand. The only potentially novel issue cited was that of a February 11, 2003, notice of levy issued to petitioners' bank, as to which see supra note 4.

The parties subsequently filed posttrial briefs. Petitioners recapitulated the positions taken throughout these proceedings and at trial, including focusing once again on lack of a recorded hearing.

OPINION

I. Collection Actions

A. General Rules

Section 6321 imposes a lien in favor of the United States upon all property and rights to property of a taxpayer liable for tax where there exists a failure to pay the tax liability after demand for payment. The lien generally arises at the time assessment is made. Sec. 6322. Section 6323, however, provides that such lien shall not be valid against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until the Secretary files a notice of lien with the appropriate public officials. Section 6320 then sets forth

procedures applicable to afford protections for taxpayers in lien situations.

Section 6320(a)(1) establishes the requirement that the Secretary notify in writing the person described in section 6321 of the filing of a notice of lien under section 6323. This notice required by section 6320 must be sent not more than 5 business days after the notice of tax lien is filed and must advise the taxpayer of the opportunity for administrative review of the matter in the form of a hearing before the IRS Office of Appeals. Sec. 6320(a)(2) and (3). Section 6320(b) and (c) grants a taxpayer who so requests the right to a fair hearing before an impartial Appeals officer, generally to be conducted in accordance with the procedures described in section 6330(c), (d), and (e).

Likewise, section 6331(a) authorizes the Commissioner to levy upon all property and rights to property of a taxpayer where there exists a failure to pay any tax liability within 10 days after notice and demand for payment. Sections 6331(d) and 6330 then specify germane protective procedures. Section 6331(d) generally requires that a person be provided with at least 30 days' prior written notice of the Commissioner's intent to levy before collection may proceed. Section 6331(d) also indicates that this notification should include a statement of available administrative appeals. Section 6330(a) expands in several

respects upon the premise of section 6331(d), forbidding collection by levy until the taxpayer has been furnished notice of the opportunity for administrative review of the matter in the form of a hearing before the IRS Office of Appeals.  Section 6330(b) grants a taxpayer who so requests the right to a fair hearing before an impartial Appeals officer.

Section 6330(c) addresses the matters to be considered at the hearing:

> SEC. 6330(c).  Matters Considered at Hearing.--In the case of any hearing conducted under this section--
>
> (1) Requirement of investigation.--The appeals officer shall at the hearing obtain verification from the Secretary that the requirements of any applicable law or administrative procedure have been met.
>
> (2) Issues at hearing.--
>
> (A) In general.--The person may raise at the hearing any relevant issue relating to the unpaid tax or the proposed levy, including--
>
> (i) appropriate spousal defenses;
>
> (ii) challenges to the appropriateness of collection actions; and
>
> (iii) offers of collection alternatives, which may include the posting of a bond, the substitution of other assets, an installment agreement, or an offer-in-compromise.
>
> (B) Underlying liability.--The person may also raise at the hearing challenges to the existence or amount of the underlying tax liability for any tax period if the person

did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability.

Once the Appeals officer has issued a determination regarding the disputed collection action, section 6330(d) allows the taxpayer to seek judicial review in the Tax Court or a District Court, depending upon the type of tax at issue. In considering whether taxpayers are entitled to any relief from the Commissioner's determination, this Court has established the following standard of review:

where the validity of the underlying tax liability is properly at issue, the Court will review the matter on a de novo basis. However, where the validity of the underlying tax liability is not properly at issue, the Court will review the Commissioner's administrative determination for abuse of discretion. [Sego v. Commissioner, 114 T.C. 604, 610 (2000).]

B. Analysis

1. Appeals Hearing

Hearings conducted under sections 6320 and 6330 are informal proceedings, not formal adjudications. Katz v. Commissioner, 115 T.C. 329, 337 (2000); Davis v. Commissioner, 115 T.C. 35, 41 (2000). There exists no right to subpoena witnesses or documents in connection with these hearings. Roberts v. Commissioner, 118 T.C. 365, 372 (2002), affd. 329 F.3d 1224 (11th Cir. 2003); Nestor v. Commissioner, 118 T.C. 162, 166-167 (2002); Davis v. Commissioner, supra at 41-42. Taxpayers are entitled to be offered a face-to-face hearing at the Appeals Office nearest

their residence.  Where the taxpayer declines to participate in a proffered face-to-face hearing, hearings may also be conducted by telephone or correspondence.  Katz v. Commissioner, supra at 337-338; Dorra v. Commissioner, T.C. Memo. 2004-16; sec. 301.6330-1(d)(2), Q&A-D6 and D7, Proced. & Admin. Regs.  Furthermore, once a taxpayer has been given a reasonable opportunity for a hearing but has failed to avail himself or herself of that opportunity, we have approved the making of a determination to proceed with collection based on the Appeals officer's review of the case file.  See, e.g., Taylor v. Commissioner, T.C. Memo. 2004-25, affd. 130 Fed. Appx. 934 (9th Cir. 2005); Leineweber v. Commissioner, T.C. Memo. 2004-17; Armstrong v. Commissioner, T.C. Memo. 2002-224; Gougler v. Commissioner, T.C. Memo. 2002-185; Mann v. Commissioner, T.C. Memo. 2002-48.  Thus, a face-to-face meeting is not invariably required.

Regulations promulgated under sections 6320 and 6330 likewise incorporate many of the foregoing concepts, as follows:

Q-D6.  How are CDP hearings conducted?

A-D6.  * * * CDP hearings * * * are informal in nature and do not require the Appeals officer or employee and the taxpayer, or the taxpayer's representative, to hold a face-to-face meeting.  A CDP hearing may, but is not required to, consist of a face-to-face meeting, one or more written or oral communications between an Appeals officer or employee and the taxpayer or the taxpayer's representative, or some combination thereof. * * *

Q-D7.  If a taxpayer wants a face-to-face CDP hearing, where will it be held?

A-D7. The taxpayer must be offered an opportunity for a hearing at the Appeals office closest to taxpayer's residence or, in the case of a business taxpayer, the taxpayer's principal place of business. If that is not satisfactory to the taxpayer, the taxpayer will be given an opportunity for a hearing by correspondence or by telephone. If that is not satisfactory to the taxpayer, the Appeals officer or employee will review the taxpayer's request for a CDP hearing, the case file, any other written communications from the taxpayer (including written communications, if any, submitted in connection with the CDP hearing), and any notes of any oral communications with the taxpayer or the taxpayer's representative. Under such circumstances, review of those documents will constitute the CDP hearing for the purposes of section 6330(b). [Sec. 301.6330-1(d)(2), Q&A-D6 and D7, Proced. & Admin. Regs.; see also sec. 301.6320-1(d)(2), Q&A-D6 and D7, Proced. & Admin. Regs. (substantially identical language except for final reference to "section 6320(b)").]

This Court has cited the above regulatory provisions, and corresponding promulgations under section 6320, with approval. See, e.g., Taylor v. Commissioner, supra; Leineweber v. Commissioner, supra; Dorra v. Commissioner, supra; Gougler v. Commissioner, supra.

With respect to the instant matter, the record reflects that petitioners were provided with an opportunity for a face-to-face hearing on September 11, 2003. The hearing did not proceed when petitioners were not permitted to record the meeting. As explained in our previous order in this case, in Keene v. Commissioner, 121 T.C. 8, 19 (2003), this Court held that taxpayers are entitled, pursuant to section 7521(a)(1), to audio record section 6330 hearings. The taxpayer in that case had

refused to proceed when denied the opportunity to record, and we remanded the case to allow a recorded Appeals hearing.  Id.

In contrast, again as noted in the Court's September 15, 2004, order, we have distinguished, and declined to remand, cases where the taxpayer had participated in an Appeals Office hearing, albeit unrecorded, and where all issues raised by the taxpayer could be properly decided from the existing record.  E.g., id. at 19-20; Frey v. Commissioner, T.C. Memo. 2004-87; Durrenberger v. Commissioner, T.C. Memo. 2004-44; Brashear v. Commissioner, T.C. Memo. 2003-196; Kemper v. Commissioner, T.C. Memo. 2003-195. Stated otherwise, cases will not be remanded to Appeals, nor determinations otherwise invalidated, merely on account of the lack of a recording when to do so is not necessary and would not be productive.  See, e.g., Frey v. Commissioner, supra; Durrenberger v. Commissioner, supra; Brashear v. Commissioner, supra; Kemper v. Commissioner, supra; see also Lunsford v. Commissioner, 117 T.C. 183, 189 (2001).  A principal scenario falling short of the necessary or productive standard exists where the taxpayers rely on frivolous or groundless arguments consistently rejected by this and other courts.  See, e.g., Frey v. Commissioner, supra; Brashear v. Commissioner, supra; Kemper v. Commissioner, supra.

Because no hearing had been conducted at all in petitioners' case, we declined to grant respondent's motion for summary

judgment. The record as it then existed did not foreclose the possibility that petitioners might have raised valid arguments had a hearing been held. Accordingly, we provided petitioners an opportunity before the Court at the trial session in Las Vegas to identify any legitimate issues they wished to raise that could warrant further consideration of the merits of their case by the Appeals Office or this Court. Petitioners, however, merely continued to focus on the denial of a recorded hearing and offered no substantive issues of merit.

Hence, despite repeated warnings and opportunities, the only contentions other than the recorded hearing advanced by petitioners are, as will be further discussed below, of a nature previously rejected by this and other courts. The record therefore does not indicate that any purpose would be served by remand or additional proceedings. The Court concludes that all pertinent issues relating to the propriety of the collection determination can be decided through review of the materials before it.

### 2. Review of Underlying Liabilities

As regards 1997 and 1998, petitioners, in asserting that they are not bound to pay Federal income taxes, are essentially seeking to challenge even the underlying liabilities they reported on their original returns. No notice of deficiency was issued to petitioners for either 1997 or 1998, but petitioners

filed amended returns and/or refund claims advancing the position they are now espousing.  These requests were denied, and petitioners were advised of their opportunity to contest the denials in the U.S. District Court or U.S. Court of Federal Claims.  Petitioners did not file suit.

This Court has ruled that taxpayers are not precluded by section 6330(c)(2)(B) from challenging self-reported liabilities when they have not otherwise been provided with a chance to do so.  Montgomery v. Commissioner, 122 T.C. 1, 9 (2004).  However, we have also recently concluded that a taxpayer whose amended returns and concomitant claims for refund were disallowed, and who was notified of the opportunity to institute a refund suit in the U.S. District Court or U.S. Court of Federal Claims, received an opportunity to dispute the self-reported liability within the meaning of section 6330(c)(2)(B).  Farley v. Commissioner, T.C. Memo. 2004-168.

Alternatively, and to the extent that the various assessments against petitioners might fall outside the foregoing precedent, we have in other circumstances involving amended returns and the advancement of only frivolous arguments, without explicitly addressing whether disallowance of refund claims could constitute the requisite opportunity for dispute, simply characterized the taxpayer's challenge as meritless, with the following observation:  "Section 6330(c)(2) provides that a

taxpayer may raise any 'relevant' issue at the collection hearing; it does not say that the taxpayer may raise 'any' issue. Petitioner raised only groundless and frivolous issues, not relevant issues." Hathaway v. Commissioner, T.C. Memo. 2004-15.

Petitioners have challenged the "existence" of their underlying tax liabilities only through generalized contentions that no statute imposes or requires them to pay income taxes. They have at no time alleged that they did not in fact receive the funds on which the tax liabilities for 1997 and 1998 are based. Thus, even if petitioners were permitted to challenge their underlying liabilities in this proceeding, they have raised no genuine, relevant issue as to the amount of such liabilities for 1997 or 1998.

With respect to 1999 and 2000, petitioners were issued statutory notices of deficiency and did not file petitions challenging those notices in this Court. Furthermore, communications from petitioners expressly reference the notices of deficiency, making clear that these documents were received. To the extent that petitioners have argued that they should nonetheless be entitled to challenge their underlying liabilities on grounds that the notices were invalid, due to a lack of a delegation of authority from the Secretary to the individual in Ogden, Utah, signing the notices, this contention is without merit.

The Secretary or his delegate may issue notices of deficiency. Secs. 6212(a), 7701(a)(11)(B) and (12)(A)(i). The Secretary's authority in this matter was previously delegated to District Directors and Directors of Service Centers, has since been redelegated consistent with the restructuring of the IRS, and may in turn be redelegated to officers or employees under the supervision of persons so authorized. Secs. 301.6212-1(a), 301.7701-9(b) and (c), Proced. & Admin. Regs.; Deleg. Order No. 193 (Rev. 6, Nov. 8, 2000); see also Nestor v. Commissioner, 118 T.C. at 165.

Accordingly, because petitioners received valid notices of deficiency and did not timely petition for redetermination, they are precluded under section 6330(c)(2)(B) from disputing their underlying 1999 and 2000 liabilities in this proceeding. Their remaining contentions generally challenging the "existence" of any statute imposing or requiring them to pay income tax warrant no further comment. See Crain v. Commissioner, 737 F.2d 1417, 1417 (5th Cir. 1984) ("We perceive no need to refute these arguments with somber reasoning and copious citation of precedent; to do so might suggest that these arguments have some colorable merit.").

C. Review for Abuse of Discretion

Petitioners have also made various arguments relating to aspects of the assessment and collection procedures that we

review for abuse of discretion. Action constitutes an abuse of discretion under this standard where arbitrary, capricious, or without sound basis in fact or law. Woodral v. Commissioner, 112 T.C. 19, 23 (1999).

As a threshold matter, we point out that petitioners' demands and allegations regarding the authority of the individuals issuing the notices of tax lien, tax lien filing, and intent to levy are meritless for reasons substantially identical to those just discussed in connection with the notices of deficiency. The Secretary or his delegate (including the Commissioner) may issue these collection notices, and authority to so issue notices regarding liens and to levy upon property has in turn been delegated to a host of pertinent collection and compliance personnel. Secs. 6320(a), 6330(a), 7701(a)(11)(B) and 12(A)(i), 7803(a)(2); secs. 301.6320-1(a)(1), 301.6330-1(a)(1), Proced. & Admin. Regs.; Deleg. Order No. 191 (Rev. 3, June 11, 2001); Deleg. Order No. 196 (Rev. 4, Oct. 4, 2000); see also Craig v. Commissioner, 119 T.C. 252, 263 (2002); Everman v. Commissioner, T.C. Memo. 2003-137. Additionally, we note that there exists no statutory requirement that such collection notices be signed. Everman v. Commissioner, supra.

Petitioners have claimed that no valid assessments support the proposed collection and have asserted that they should have been provided with copies of Form 23C, Summary Record of

Assessment, with copies of the tax returns from which the assessments emanated, and with verification from the Secretary that the requirements of any applicable law or administrative procedure were met.

Federal tax assessments are formally recorded on a record of assessment in accordance with section 6203. The Commissioner is not required to use Form 23C in making an assessment. Roberts v. Commissioner, 118 T.C. at 369-371. Furthermore, section 6330(c)(1) mandates neither that the Appeals officer rely on a particular document in satisfying the verification requirement nor that the Appeals officer actually give the taxpayer a copy of the verification upon which he or she relied. Craig v. Commissioner, supra at 262; Nestor v. Commissioner, supra at 166.

A Form 4340, Certificate of Assessments, Payments and Other Specified Matters, for instance, constitutes presumptive evidence that a tax has been validly assessed pursuant to section 6203. Davis v. Commissioner, 115 T.C. at 40 (and cases cited threat). Consequently, absent a showing by the taxpayer of some irregularity in the assessment procedure that would raise a question about the validity of the assessments, a Form 4340 reflecting that tax liabilities were assessed and remain unpaid is sufficient to support collection action under section 6330. Id. at 40-41. We have specifically held that it is not an abuse of discretion for an Appeals officer to rely on Form 4340, Nestor

v. Commissioner, supra at 166; Davis v. Commissioner, supra at 41, or a computer transcript of account, Schroeder v. Commissioner, T.C. Memo. 2002-190; Mann v. Commissioner, T.C. Memo. 2002-48, to comply with section 6330(c)(1).

Here, the record contains Forms 4340 for 1997, 1998, 1999, and 2000, indicating that assessments were made for each of these years and that taxes remain unpaid. Petitioners have cited no particular irregularities in the assessment procedure.

In addition to the specific dictates of sections 6320 and 6330, the Secretary, upon request, is directed to furnish to the taxpayer a copy of pertinent parts of the record of assessment setting forth the taxpayer's name, the date of assessment, the character of the liability assessed, the taxable period, if applicable, and the amounts assessed. Sec. 6203; sec. 301.6203-1, Proced. & Admin. Regs. A taxpayer receiving a copy of Form 4340 has been provided with all the documentation to which he or she is entitled under section 6203 and section 301.6203-1, Proced. & Admin. Regs. Roberts v. Commissioner, supra at 370 n.7. This Court likewise has upheld collection actions where taxpayers were provided with literal transcripts of account (so-called MFTRAX). See, e.g., Frank v. Commissioner, T.C. Memo. 2003-88; Swann v. Commissioner, T.C. Memo. 2003-70.

The notices of determination recite: "Appeals has reviewed the certified computer transcripts and verified the assessments.

Copies of the certified transcripts have been mailed to you."
Furthermore, arguments similar to petitioner's statements concerning copies of the tax returns from which assessments were made have been summarily rejected.  See, e.g., Bethea v. Commissioner, T.C. Memo. 2003-278; Fink v. Commissioner, T.C. Memo. 2003-61.  The Court concludes that petitioners' complaints regarding the assessments and verification are meritless.

Petitioners have denied receiving the notice and demand for payment that section 6303(a) establishes should be given within 60 days of the making of an assessment.  However, a notice of balance due constitutes a notice and demand for payment within the meaning of section 6303(a).  Craig v. Commissioner, supra at 262-263.  The Forms 4340 indicate that petitioners were sent such notices of balance due for each of the tax years involved.

Petitioners have also attempted to raise section 7401 as a defense.  Section 7401 directs that no civil action for, inter alia, collection or recovery of taxes shall be commenced unless authorized or sanctioned by the Secretary.  This section has no bearing on the instant proceeding in that the filing of a notice of Federal tax lien under section 6323 and the levying upon property under section 6331 are administrative actions that do not necessitate the institution of a civil suit.  United States v. Rodgers, 461 U.S. 677, 682-683 (1983); Yazzie v. Commissioner, T.C. Memo. 2004-233, affd. __ Fed. Appx. __ (9th Cir. 2005).

Thus, with respect to those issues enumerated in section 6330(c)(2)(A) and subject to review in collection proceedings for abuse of discretion, petitioners have not raised any spousal defenses, valid challenges to the appropriateness of the collection action, or collection alternatives. As this Court has noted in earlier cases, Rule 331(b)(4) states that a petition for review of a collection action shall contain clear and concise assignments of each and every error alleged to have been committed in the notice of determination and that any issue not raised in the assignments of error shall be deemed conceded. See Lunsford v. Commissioner, 117 T.C. at 185-186; Goza v. Commissioner, 114 T.C. 176, 183 (2000). For completeness, we have addressed various points advanced by petitioners during the administrative process and this litigation, but the items listed in section 6330(c)(2)(A) were not pursued during any proceedings. Accordingly, the Court concludes that respondent's determination to proceed with collection of petitioners' tax liabilities was not an abuse of discretion.

II. Section 6673 Penalty

Section 6673(a)(1) authorizes the Court to require the taxpayer to pay a penalty not in excess of $25,000 when it appears to the Court that, inter alia, proceedings have been instituted or maintained by the taxpayer primarily for delay or that the taxpayer's position in such proceeding is frivolous or

groundless.  In Pierson v. Commissioner, 115 T.C. 576, 581 (2000), we warned that taxpayers abusing the protections afforded by sections 6320 and 6330 through the bringing of dilatory or frivolous lien or levy actions will face sanctions under section 6673.  We have since repeatedly disposed of cases premised on arguments akin to those raised herein summarily and with imposition of the section 6673 penalty.  See, e.g., Craig v. Commissioner, 119 T.C. at 264-265 (and cases cited threat).

With respect to the instant matter, and despite petitioners' denials in their objection to respondent's motion for summary judgment, we are convinced that petitioners instituted this proceeding primarily for delay.  Throughout the administrative and litigation process, petitioners advanced contentions and demands previously and consistently rejected by this and other courts.  They submitted lengthy communications quoting, citing, using out of context, and otherwise misapplying portions of the Internal Revenue Code, regulations, Supreme Court decisions, and other authorities.  While their procedural stance concerning recording was correct, they ignored the Court's explicit warning that any further proceedings would be justified only in the face of relevant and nonfrivolous issues.

Moreover, petitioners were, on multiple occasions, expressly alerted to the potential use of sanctions in their case.  Yet Mr. Carrillo appeared at the trial session in Las Vegas without

any legitimate evidence or argument in support of their position. He instead continued to espouse those positions that had been explicitly addressed and rejected in this Court's order of September 15, 2004, or in other cases previously decided by the Court. The Court sua sponte concludes that a penalty of $5,000 should be awarded to the United States in this case.

To reflect the foregoing,

<u>An appropriate decision will be entered</u>.